## UNITED STATES OF AMERICA
### v.
## NICOMEDES MARTINEZ–HIDALGO, Appellant

[993 F.2d 1052]

No. 92-7574

United States Court of Appeals

for the Third Circuit

May 21, 1993

DAVID NISSMAN (Argued), Assistant U.S. Attorney; ALPHONSO G. ANDREWS, JR., Assistant U.S. Attorney; H. PETER MABE, United States Attorney, Christiansted, St. Croix, V.I., *for appellee*

THOMAS ALKON (Argued) (ALKON & RHEA) Christiansted, St. Croix, V.I., *for appellant*

BEFORE: GREENBERG, SCIRICA, and GARTH, *Circuit Judges*

## OPINION OF THE COURT

GREENBERG, *Circuit Judge*

### I. FACTUAL AND PROCEDURAL BACKGROUND

Defendant-appellant Nicomedes Martinez-Hidalgo appeals from the judgment of conviction and sentence entered on October 20, 1992, following his conviction at a jury trial in the District Court of the Virgin Islands for possession of cocaine on the high seas with

intent to distribute and conspiracy on the high seas to distribute cocaine in violation of the Maritime Drug Law Enforcement Act, 46 U.S.C. app. §§ 1903(a) and (j) (Supp. 1992). Martinez, a Colombian national, and the other members of the crew of his vessel were arrested in international waters after the Coast Guard boarded his vessel and found that it contained eight burlap bags of cocaine, later determined to weigh 282 kilos. He contends, as he did in the district court, that the Maritime Drug Law Enforcement Act does not apply to him because he was a nonresident alien on a foreign vessel sailing outside United States territorial waters and there was an insufficient nexus between his activities and the United States to sustain the district court's jurisdiction. In addition, for the first time he now advances the contention that the Coast Guard searched and seized his vessel in violation of the Fourth Amendment. We will affirm.

The facts in the case are not complicated nor, insofar as material to the issues raised on this appeal, in dispute. On December 12, 1991, the USS Hercules, a navy vessel with four Coast Guard members on board, was on patrol at a point approximately 60 miles southwest of St. Croix and 80 miles south of Puerto Rico. The Coast Guard command in San Juan had warned the Hercules crew to be on the alert for a drug drop. At that time the Hercules encountered a 26-foot flagless boat without name or numbers. This boat was constructed of wood and fiberglass and was difficult to detect on radar because of the unusually small amount of metal used in its construction. An officer on the Hercules contacted the boat's crew through a bull horn and asked their nationality, the place of origin of their voyage, and if they had documentation. The crew responded that they and their boat were Colombian but that they had sailed from Venezuela without documentation. The crew also claimed to have been looking for another boat in distress which had been adrift for about a week. The Coast Guard then radioed for a statement of no objection (SNO) from the Colombian government so that the Hercules crew could check the 26-foot boat for documentation. For the next 12 to 14 hours the two vessels remained within 1000 feet of each other while the Coast Guard awaited a response from Colombia.

Early the following morning the Colombian government issued a SNO authorizing the Coast Guard to board the boat to check for documentation. This SNO was forwarded by radio to the Hercules,

which then sent a boarding party to the boat. When the party boarded, it found that the boat's crew consisted of Martinez, Captain Roberto Benitz-Zatas, and Fredi Guzman-Barrio. The boarding party observed in plain view several burlap bags which they suspected contained drugs. One of the members of the party asked the boat's crew if they had documents or registration for the boat and was given a negative response. The Hercules party then unsuccessfully searched for documentation.

The Coast Guard then started a process to obtain a second SNO. But before the Coast Guard obtained this second SNO, the boarding party tested the contents of one of the bags and determined that it was cocaine. Shortly thereafter the Coast Guard received a second SNO from the Colombian government rejecting the claim of registry and indicating that the boat should be considered stateless. The boarding party then arrested the crew and searched the boat. While searching, the party found a chart of the Caribbean and Gulf of Mexico with coordinates indicating a route leading ultimately towards Puerto Rico and St. Croix.

A grand jury in the District of the Virgin Islands indicted Martinez, Benitz, and Guzman for violating 46 U.S.C. app. §§ 1903(a) and (j). Benitz pleaded guilty, while Martinez and Guzman pleaded not guilty and were tried together before a jury. Following the close of the government's case, Martinez and Guzman moved for a judgment of acquittal pursuant to Fed. R. Crim. P. 29 on the ground that the proof was insufficient to establish that they intended the drugs to land in the United States. The district court denied the motion.[1] Benitz then testified on behalf of Martinez and Guzman that he told them that the purpose of the trip was to meet another boat in distress and that they were not aware of the cocaine cargo at the outset of the voyage.

In its charge, the court told the jury that the "ultimate destination of the cocaine" was "not in issue in this case" and that there was "no requirement" that the government prove that the cocaine "would have entered the United States." While this statement of the law was inconsistent with Martinez's legal position, he did not object to it for, as he explained at oral argument before us, he con-

---

[1] Martinez also made an unsuccessful Rule 29 motion challenging the sufficiency of the evidence as to the conspiracy charge. He does not challenge this disposition on appeal.

sidered that the nexus issue was a jurisdictional matter which the court had resolved against him when it denied his Rule 29 motion for acquittal. Martinez and Guzman were convicted on both counts. The court sentenced Martinez to a custodial term of 235 months and he then appealed.[2]

## II. DISCUSSION

1. *May the government prosecute Martinez under the Maritime Drug Law Enforcement Act?*

■ Martinez contends that the government did not show that he intended that the drugs eventually would reach the United States. Thus, in his view, the district court did not have jurisdiction and he could not be prosecuted under 46 U.S.C. app. §§ 1903(a) and (j). However, Martinez's contention is legally inadequate because the Maritime Drug Enforcement Act clearly allows for his prosecution in the United States regardless of the destination of the drugs.

Sections 1903(a) and (j) state:

(a) It is unlawful for any person on board a vessel of the United States, or *on board a vessel subject to the jurisdiction of the United States,* or who is a citizen of the United States or a resident alien of the United States on board any vessel, to knowingly or intentionally manufacture or distribute, or to possess with intent to manufacture or distribute, a controlled substance.

(j) Any person who attempts or conspires to commit any offense defined in [the Maritime Drug Law Enforcement Act] shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

(Emphasis added.)

Section 1903(c)(1)(A) provides that "a vessel without nationality" is "subject to the jurisdiction of the United States." Sections 1903(c)(2)(A) and (B) in turn define a "vessel without nationality" as including:

---

[2] We have jurisdiction pursuant 28 U.S.C. § 1291. The district court had subject matter jurisdiction pursuant to 48 U.S.C. § 1612. We are deciding this case through the application of legal precepts and thus exercise plenary review.

(A) a vessel aboard which the master or person in charge makes a claim of registry, *which claim is denied by the flag nation whose registry is claimed*;

(B) any vessel aboard which the master or person in charge fails, upon request of an officer of the United States empowered to enforce applicable provisions of United States law, to make a claim of nationality or registry for that vessel.

(Emphasis added.)

Clearly the 26-foot boat was a "vessel without nationality" because Colombia disclaimed its registry in the second SNO. Accordingly, there is no doubt that the district court had jurisdiction even if there was not a nexus between Martinez's activities and the United States.[3]

Our conclusion is consistent with the decision of the Court of Appeals for the First Circuit in United States v. Victoria, 876 F.2d 1009 (1st Cir. 1989), a case dealing with a marijuana prosecution arising from the seizure of a vessel originally sighted by the United States Navy 60 miles north of Colombia. The Victoria court, in the course of an extensive review of the cases dealing with extraterritorial application of United States narcotics laws on the high seas, held:

First, after urging that Congress did not intend the statute under which he was convicted to extend beyond the bounds of international law, appellant says that international law would not permit the United States to convict him for possessing marijuana so near Colombia and so far from the United States. This latter assertion is not correct. The Delfin was a 'stateless' vessel. It not only failed to respond to multilingual inquiries about its nationality, but also the Coast Guard could find no evidence of its nationality on board. The relevant statute, 46 U.S.C. App. § 1903(c), provides that 'any vessel aboard which the master or person in charge fails, upon request of an officer of the United States . . . , to make a claim of nationality or registry for that vessel' is a 'vessel without nationality.' The statute says that such a vessel is 'subject to the jurisdiction of the United States.' And, as United States courts have interpreted international law, the law gives the 'United States . . .

---

[3] We are satisfied that from the facts developed even if a nexus were required the record established that there was such a nexus.

authority to treat stateless vessels as if they were its own.' Thus the United States, as a matter of international law, may prosecute drug offenders on stateless ships found on the high seas.

876 F.2d at 1010 (case citations omitted.)

If sections 1903(a), (c) and (j) leave any doubt about the district court's jurisdiction, which they do not, Congress certainly eliminated that doubt in 46 U.S.C. app. § 1903(h) which, without requiring that an act to be punished must have a domestic nexus, provides that section 1903 "is intended to reach acts of possession, manufacture, or distribution outside the territorial jurisdiction of the United States." Moreover, 46 U.S.C. app. § 1903(d) provides "A claim of failure to comply with international law in the enforcement of [the Maritime Drug Law Enforcement Act] may be invoked solely by a foreign nation, and a failure to comply with international law shall not divest a court of jurisdiction or otherwise constitute a defense to any proceeding under [the Maritime Drug Law Enforcement Act]."

■■■ We recognize that we have held that under 21 U.S.C. § 955a(d)(1), the predecessor section to 46 U.S.C. app. § 1903, prosecutions were permissible only if the government demonstrated that the smugglers intended their activities to have an effect on the United States. United States v. Wright-Barker, 784 F.2d 161, 168-169 (3d Cir. 1986). We concluded that there was a domestic effects requirement because of "the traditional requirement of international law that a state apply criminal jurisdiction to acts committed outside its territorial borders only where an effect occurs within those borders." Id. at 167. But the "effects" requirement of Wright-Barker now has been superseded by 46 U.S.C. app. § 1903(d).[4] There is, of course, no doubt the Congress may override international law by clearly expressing its intent to do so. See United States v. James-Robinson, 515 F. Supp. 1340, 1343 (S.D. Fla. 1981). Inasmuch as Congress in section 955a expressed no such intent, we felt obligated in Wright-Barker to apply the nexus test as required by international law. But 46 U.S.C. app. § 1903(d) expresses the necessary congressional intent to override international law to the extent that international law might require a nexus to the United States for the

---

[4] In view of this conclusion, we need not consider whether we would have imposed a domestic effects requirement under section 955a(d)(1) to stateless vessels. The vessel in Wright-Barker had a Panamanian registry.

371

prosecution of the offenses defined in the Maritime Drug Law Enforcement Act.[5]

We further acknowledge that our conclusion that the government need not establish a domestic nexus to prosecute offenses under the Maritime Drug Law Enforcement Act is not reconcilable with some of the wording in the opinion of the Court of Appeals for the Ninth Circuit in United States v. Davis, 905 F.2d 245 (9th Cir. 1990), cert. denied, 111 S.Ct. 753 (1991). The Davis court indicated that, in a section 1903 prosecution, to apply the statute extraterritorially "consistently with due process, there must be a sufficient nexus between the defendant and the United States so that such application would not be arbitrary or fundamentally unfair." 905 F.2d at 248-49.[6]

■ We decline to follow Davis as we see nothing fundamentally unfair in applying section 1903 exactly as Congress intended—extraterritorially without regard for a nexus between a defendant's conduct and the United States. In this regard, we point out that the framers of the Constitution themselves provided that Congress had the power "[t]o define and punish Piracies and Felonies committed on the high seas, and Offenses against the Law of Nations." U.S. Const. art. I, § 8, cl. 10. Inasmuch as the trafficking of narcotics is condemned universally by law-abiding nations, we see no reason to conclude that it is "fundamentally unfair" for Congress to provide for the punishment of persons apprehended with narcotics on the high seas.

We, of course, are not suggesting that there is no limitation on Congress's power to declare that conduct on the high seas is criminal and is thus subject to prosecution under United States law. To the contrary, we acknowledge that there might be a due process problem if Congress provided for the extraterritorial application of United States law to conduct on the high seas without regard for a domestic nexus if that conduct were generally lawful throughout the world. But that is not the situation here.

Finally, in concluding that there is no due process problem here, we pose the rhetorical question of who would prosecute narcotics

---

[5] Of course some of the offenses described in the act inherently have a nexus with the United States.

[6] It would be possible to distinguish Davis as that case did not involve a stateless vessel but we will not do so as our holding obviously applies to any prosecution under the Maritime Drug Law Enforcement Act.

offenders in cases such as this if the United States did not? We think that if the United States could not have arrested Martinez and his cohorts and seized the vessel and its contents that no country would have done so, given the vessel's location in the Caribbean.[7] The due process clause does not require that the high seas be turned into a sanctuary highway for drug dealers.

Having concluded that the district court had jurisdiction over this case, we also recognize that there is some authority that "[u]nder 46 U.S.C. App. § 1903, jurisdiction constitutes a factual as well as legal element of the crime" so that the question of jurisdiction is "therefore appropriate for the jury." United States v. Piedrahita-Santiago, 931 F.2d 127, 129 (1st Cir. 1991).[8] Here, as we have indicated, the district court did not present the issue of jurisdiction to the jury. However, while Martinez contends that the district court erred in its conclusion as to jurisdiction, he has never argued that the jurisdictional issue should have been submitted to the jury. Therefore, Martinez did not object when the court told the jury that the government had no requirement to demonstrate that the cocaine would have entered the United States.

■ In these circumstances we could grant relief to Martinez because of a procedural irregularity in the disposition of the jurisdictional issue only if we believed that the district court committed plain error when it did not charge the jury that it was obliged to determine whether the 26-foot boat was stateless. But even if we agreed with Piedrahita-Santiago that the jurisdictional determination under 46 U.S.C. app. § 1903 is a factual question for the jury, an issue which we do not decide in this case, we would find that the district court did not commit plain error in its charge for there was no evidence at the trial to refute the government's proofs that the

---

[7] Similarly, in considering the jurisdictional issue raised in Wright-Barker, we pointed out that "other nations [were] unlikely to have a desire to regulate smuggling in the area of the North Atlantic" where the Coast Guard encountered the vessel involved in that case. 784 F.2d at 168.

[8] The government cites United States v. Pretel, 939 F.2d 233, 236-37 (5th Cir. 1991), cert. denied, 112 S.Ct. 327 (1991), for the proposition that the jurisdictional reach of the Maritime Drug Law Enforcement Act should be determined by the court without submission of the issue to the jury. But that case may have limited application as the precise question involved was whether the deposed Panamanian president had the capacity to issue a valid SNO, a political rather than a judicial issue.

vessel was stateless.[9] Thus, even if the jurisdictional issue should have been a jury matter, its resolution by the court surely did not undermine the fundamental fairness of the trial and contribute to a miscarriage of justice. See United States v. Olano, 61 U.S.L.W. 4421, 4424 (U.S. Apr. 26, 1993); Government of Virgin Islands v. Smith, 949 F.2d 677, 681 (3d Cir. 1991).[10]

## 2. *Was the Fourth Amendment issue preserved?*

■ Martinez's Fourth Amendment claim that there was no reasonable basis for the seizure requires little discussion as he concedes that he never filed a motion to suppress in the district court. Thus, he has waived this claim.[11] See United States v. Frank, 864 F.2d 992, 1006 (3d Cir. 1988), cert. denied, 490 U.S. 1095, 109 S.Ct. 2442 (1989).

## III. CONCLUSION

The judgment of conviction and sentence of October 20, 1992, will be affirmed.

---

[9] In his testimony, Benitz did not contradict the government's evidence which demonstrated that his boat was stateless and that the Coast Guard had obtained the SNOs. Martinez and Guzman did not testify.

[10] The statement in Piedrahita-Santiago that jurisdiction under section 1903 raises a factual issue for the jury cannot be reconciled with our procedural disposition in Wright-Barker. In Wright-Barker, the district court decided the jurisdictional nexus issue itself at a preliminary hearing prior to a jury trial. Furthermore, on appeal we reviewed the district court's nexus findings under the "clearly erroneous" standard. 784 F.2d at 170. While it is true that the Wright-Barker court did not consider whether the nexus issue should have been presented to the jury, there is no escape from the fact that the district court in this case in deciding the jurisdictional question itself followed a procedure which we inferentially approved there. In these circumstances, even if the district court erred in not submitting the jurisdictional issue to the jury, its error was not "clear under [our] current law" and thus the error could not be "plain." See United States v. Olano, 61 U.S.L.W. at 4424. Inasmuch as the parties have not briefed the issue of whether the court or the jury finds the facts underlying the court's jurisdiction, we will not discuss the point further. We think it likely that in future cases it will be addressed directly.

[11] We are not by our procedural disposition implying that there would have been merit to the claim. See United States v. Verdugo-Urquidez, 110 S.Ct. 1056, 1061 (1990).