UNITED STATES of America

v.

William GREER, a/k/a "Thomas William Dodds," Stephen Hutchins, Michael Maple, Thomas Cook, a/k/a "George Wright," Gregory Stevens, Martin Scott, and Glen Koski, Defendants.

No. 2:95–CR–72.

United States District Court,
D. Vermont.

Feb. 19, 1997.

Robert Francis O'Neill, Gravel & Shea, Paul S. Volk, Blodgett, Watts & Volk, Burlington, VT, Robert Kalina, Rubin & Bailin, New York City, for William Greer aka Thomas Williams Dodds.

Mark Alan Kaplan, Jarvis & Kaplan, Burlington, VT, Barry Edward Griffith, Griffith & Lundeen, P.C., Rutland, VT, Theodore Frederic Robare, Theodore Robare, P.C., Rutland, VT, for Stephen Brent Hutchins.

Bradley Specht Stetler, Stetler & Allen, Burlington, VT, for Thomas Cook aka George Wright.

Mark John Keller, Cain & Keller, Burlington, VT, for Gregory Stevens.

Richard C. Bothfeld, Bothfeld & Volk, P.C., L. Randolph Amis, III, L. Randolph Amis, P.C., Burlington, VT, for Gary Norman Peryea.

Robert Andres, Burlington, VT, for William Carr.

David J. Williams, Sleigh & Williams, St. Johnsbury, VT, for Martin Scott.

Barry Edward Griffith, Griffith & Lundeen, P.C., Rutland, VT, for Claire Cunningham.

Paul S. Volk, Blodgett, Watts & Volk, Burlington, VT, for Joseph Desautel.

Martin A. Maley, Kissane Associates, St. Albans, VT, for Glen Koski.

Thomas D. Anderson, David V. Kirby, Asst. U.S. Attys., Office of U.S. Attorney, District of Vermont, Burlington, VT, for U.S.

## OPINION AND ORDER: MARITIME DRUG LAW ENFORCEMENT ACT

SESSIONS, District Judge.

Defendants Greer, Hutchins, Cook, Scott and Koski have variously moved to dismiss Count 4 of the superseding indictment on due process grounds and for improper venue (papers 209, 216, 221, 224, 237, 240). In addition, Greer moves for a change of venue to the United States District Court for the District of Columbia (paper 237). For the reasons that follow, Defendants' motions to dismiss are denied. Greer's motion for change of venue is denied.

Count 4 charges that the defendants conspired to commit offenses against the United States in violation of the Maritime Drug Law Enforcement Act ("MDLEA"), 46 U.S.C.App. § 1903. Under the MDLEA, it is unlawful for any citizen of the United States on board any vessel to knowingly or intentionally distribute, or possess with intent to distribute, a controlled substance. 46 U.S.C.App. § 1903(a) (Supp.1996). It is also unlawful for any person on board a vessel subject to the jurisdiction of the United States to knowingly or intentionally distribute, or possess with intent to distribute, a controlled substance. *Id.* A conspiracy to commit this offense is subject to the same penalties as those prescribed for the offense. 46 U.S.C.App. § 1903(j).

## BACKGROUND

According to the superseding indictment, Greer and his co-defendants conspired to import and export large quantities of hashish and marijuana, beginning in approximately 1980, and continuing until February, 1993. As organizers of the conspiracy, Greer and Hutchins recruited and worked with various individuals in the United States, Canada and the Netherlands. Greer and Hutchins established various smuggling routes along the

border between Vermont and Quebec to transport money and drugs without going through customs.

Between 1989 and 1991, multi-ton quantities of hashish were imported into Canada for distribution in Canada and the United States. In 1989, hashish was obtained in Pakistan and shipped to Europe. In the vessel LUKAS, approximately 30 tons of hashish was then shipped across the Atlantic and up the St. Lawrence Seaway, where it was off-loaded and transported to a location in Canada near the Ontario/Quebec border. In July 1991, a similar smuggling scheme was attempted, this time with approximately 55 tons of hashish on the vessel GIANT 4. The plan went awry, and only a fraction of the shipment was off-loaded. The remainder was abandoned in the St. Lawrence Seaway, in Canadian territorial waters, where it was seized by members of the Quebec Provincial Police and Canadian Customs.

The defendants in this case were arrested on Canadian warrants shortly thereafter. After completing sentences in Canada, an eight count indictment was brought in this district in August, 1995. In Count 4 of a superseding indictment filed July 24, 1996, the defendants were charged with conspiring to have a United States citizen on board a vessel distribute and possess with intent to distribute hashish.

The defendants claim that the count should be dismissed because prosecution on this count would violate the due process clause of the Fifth Amendment to the United States Constitution, and because venue in the District of Vermont is improper. Defendant Greer also argues that the statute does not reach the conduct of the defendants, that if it does, it is unconstitutionally vague as applied to them, and that the statute violates equal protection as well. Finally, Greer requests that venue on Count 4 be transferred to the United States District Court for the District of Columbia.

## DISCUSSION

### I. Jurisdiction

Title 46, U.S.C.App. § 1903(a) provides in relevant part:

It is unlawful for any person ... on board a vessel subject to the jurisdiction of the United States, or who is a citizen of the United States ... on board any vessel, to knowingly or intentionally manufacture or distribute, or to possess with intent to manufacture or distribute, a controlled substance.

A "vessel subject to the jurisdiction of the United States" includes "a vessel located in the territorial waters of another nation, where the nation consents to the enforcement of United States law by the United States." 46 U.S.C.App. § 1903(c)(1)(E).

The Defendants contend that the United States lacks jurisdiction over criminal acts committed outside its territory, absent some nexus between the conduct and the United States. The government responds that it is not required to establish a nexus between the defendants' conduct and the United States, but that if nexus is required, it will produce evidence sufficient to establish one.

The question of whether the United States may assert jurisdiction over the Defendants' conduct involves three issues: 1) whether Congress has the authority to give extraterritorial effect to the MDLEA; 2) if it does, did Congress intend for the MDLEA to reach the Defendants' conduct; and 3) would prosecuting the Defendants under the MDLEA offend due process? *See United States v. Davis*, 905 F.2d 245, 248 (9th Cir. 1990).

■ Congress has the power to control the conduct of United States citizens abroad, whether on the high seas or within the territory of other sovereigns. *United States v. Mitchell*, 553 F.2d 996, 1001 (5th Cir.1977); *United States v. Black*, 291 F.Supp. 262, 266 (S.D.N.Y.1968). *See Skiriotes v. State of Florida*, 313 U.S. 69, 73, 61 S.Ct. 924, 927–28, 85 L.Ed. 1193 (1941) (United States is not debarred by any rule of international law from governing conduct of its own citizens upon the high seas or even in foreign countries when the rights of other nations or their nationals are not infringed); *Blackmer v. United States*, 284 U.S. 421, 52 S.Ct. 252, 76 L.Ed. 375 (1932) (for disobedience to United States law United States citizen living in

France was subject to punishment in United States court); *Restatement (Third) of the Foreign Relations Law of the United States* § 402 (1987) (state has jurisdiction to prescribe law with respect to activities of its nationals outside as well as within its territory). Thus Congress had the authority to give extraterritorial effect to the MDLEA with respect to citizens of the United States.

■ Congress has the power under Article I, Section 8, Clause 10 of the United States Constitution to define and punish felonies committed on the high seas. The Constitution thus authorized Congress to give extraterritorial effect to the MDLEA with respect to conduct taking place upon the high seas. *See United States v. Davis,* 905 F.2d at 248.

Congress made its extraterritorial intentions explicit when it enacted the MDLEA: "[section 1903] is intended to reach acts of possession, manufacture, or distribution committed outside the territorial jurisdiction of the United States." 46 U.S.C.App. § 1903(h). The only question remaining is whether the due process clause limits the application of the statute to the Defendants' conduct. "As long as Congress has expressly indicated its intent to·reach such conduct, a 'United States court would be bound to follow the Congressional direction unless this would violate the due process clause of the Fifth Amendment.'" *United States v. Pinto–Mejia,* 720 F.2d 248, 259 (2d Cir.1983) (quoting *Leasco Data Processing Equip. Corp. v. Maxwell,* 468 F.2d 1326, 1334 (2d Cir.1972)).

A panel of the Ninth Circuit Court of Appeals held that in order to apply the MDLEA extraterritorially, due process required that there be a sufficient nexus between a defendant and the United States, so that such application would not be arbitrary or fundamentally unfair, in *United States v. Davis,* 905 F.2d at 248–49. *Davis* involved a British vessel intercepted by the Coast Guard on the high seas off the coast of California. The defendant was not a United States citizen. In that case, the Court found a sufficient nexus in facts supporting a conclusion that the defendant intended to smuggle marijuana into the United States.

The 9th Circuit reiterated its nexus requirement in cases involving foreign vessels and foreign crew members intercepted in international waters, in *United States v. Khan,* 35 F.3d 426, 429 (9th Cir.1994). In *United States v. Juda,* 46 F.3d 961, 966–67 (9th Cir.), *cert. denied sub nom. Paris v. United States,* —— U.S. ——, 115 S.Ct. 1811, 131 L.Ed.2d 735, *and cert. denied,* —— U.S. ——, 115 S.Ct. 2632, 132 L.Ed.2d 872 (1995), however, the Court distinguished a case involving United States citizens on board a stateless vessel intercepted on the high seas. In *Juda,* the Court found it unnecessary to decide whether nexus had been shown, because " 'courts have agreed uniformly that stateless vessels on the high sees [sic] are, by virtue of their statelessness, subject to the jurisdiction of the United States.'" 46 F.3d at 967 (quoting *Pinto–Mejia,* 720 F.2d at 260–61). *See also United States v. Caicedo,* 47 F.3d 370, 372 (9th Cir.1995) (no nexus required when case involved foreign nationals aboard stateless vessel on the high seas).

In *Juda,* the Court noted that under international law, a nation may generally assert jurisdiction over its citizens. 46 F.3d at 967. That the vessel's statelessness was the decisive factor, however, is evident from the same panel's decision a day later in *United States v. Medjuck,* 48 F.3d 1107 (9th Cir. 1995). The *Medjuck* defendants were involved in the same conspiracy as the *Khan* defendants. Medjuck, a Canadian citizen, was arrested in Seattle, Washington, following the seizure of a foreign flag ship and its cargo of approximately 70 tons of hashish. His codefendant, a United States citizen, surrendered to the authorities in Singapore. In reversing the defendants' convictions, the Ninth Circuit held that the district court had erred by ruling as a matter of law that the government need not show nexus. *See also United States v. Aikins,* 946 F.2d 608, 613–14 (9th Cir.1990) (nexus required in case involving foreign vessel intercepted on high seas with crew which·included United States citizen).

The First Circuit has held that under the MDLEA's predecessor statute, 21 U.S.C. § 955a (1981), international law did not prohibit the assertion of jurisdiction over a Unit-

ed States citizen aboard a foreign vessel on the high seas. *United States v. Kaercher,* 720 F.2d 5 (1st Cir.1983) (per curiam). The issue of due process was not raised or addressed, however. *See also United States v. Crews,* 605 F.Supp. 730 (S.D.Fla.1985) (same), *aff'd sub nom. United States v. McGill,* 800 F.2d 265 (11th Cir.1986).

The government has argued that this Court should reject *Davis* and its progeny in favor of the Third Circuit's holding in *United States v. Martinez–Hidalgo,* 993 F.2d 1052 (3d Cir.1993). *Martinez–Hidalgo* involved a stateless vessel and Colombian crew in international waters. The Court declined to follow *Davis,* as it saw "nothing fundamentally unfair in applying section 1903 exactly as Congress intended—extraterritorially without regard for a nexus between a defendant's conduct and the United States." *Id.* at 1056. It specifically did not distinguish between stateless and foreign flag vessels. *Id.* at n. 6. It concluded by asking rhetorically, "[W]ho would prosecute narcotics offenders in cases such as this if the United States did not?" *Id.* at 1057.

The Second Circuit has not addressed the specific issue of whether nexus is required in order to assert jurisdiction under the MDLEA. It has ruled in a prosecution under 21 U.S.C. § 955a that a stateless vessel on the high seas was subject to the jurisdiction of the United States without a showing of nexus. *Pinto–Mejia,* 720 F.2d at 260–61. More recently in *United States v. Quemener,* 789 F.2d 145 (2d Cir.1986), another § 955a prosecution, the Second Circuit noted that international law imposes a nexus requirement when a state seeks to assert jurisdiction over a foreign vessel. *Id.* at 156.

It seems clear that the Second Circuit has drawn a distinction similar to that drawn by the Ninth Circuit: jurisdiction may be asserted over a stateless vessel regardless of whether there is a nexus with the United States, but in order to assert jurisdiction over a foreign flag vessel, "the state seeking to assert jurisdiction [must] show a nexus between it and the foreign vessel that is sufficient to justify supplanting the flag state's normally 'exclusive jurisdiction.'" *Pinto–Mejia,* 720 F.2d at 261.

The case at bar involves United States citizens, a foreign vessel, and Canadian territorial waters. *Pinto–Mejia* directs this Court to follow the statute's directive to apply it extraterritorially unless to do so would violate the due process clause of the Fifth Amendment. *Id.* at 259. Although it is clear that Congress has the power to enact statutes that exceed the limits of international law, it may not exceed the limits of the due process clause. *Id.* Principles of international law may offer guidance, moreover, in determining whether a particular application of the statute would violate due process. *United States v. Caicedo,* 47 F.3d at 372; *Pinto–Mejia,* 720 F.2d at 261; *Quemener,* 789 F.2d at 156.

International law recognizes nationality as one basis for exercising jurisdiction, as long as the exercise of such jurisdiction is reasonable. *Restatement, Foreign Relations Law,* § 402, 403. Reasonableness is determined by evaluating the circumstances, including "the link of the activity to the territory of the regulating state, *i.e.,* the extent to which the activity takes place within the territory, or has substantial, direct, and foreseeable effect upon or in the territory." *Restatement, Foreign Relations Law,* § 403(2).

International law principles suggest that some nexus to the United States must be shown, in order for the United States to assert jurisdiction over criminal conduct occurring on a foreign vessel in foreign territorial waters. Compliance with international law is not synonymous with compliance with due process, however; the "ultimate question [is] would application of the statute to the defendants be arbitrary or fundamentally unfair?" *Juda,* 46 F.3d at 967 (quoting *Davis,* 905 F.2d at 249, n. 2).

The Third Circuit suggested in *Martinez–Hidalgo* that due process was satisfied in part because no state other than the United States had any interest in prosecuting these narcotics offenders, given the location of the vessel on the Caribbean high seas. 993 F.2d at 1057. By contrast, in this case, the contraband having been seized within the territorial waters of Canada, Canadian authorities promptly investigated and prosecuted. "A

defendant would have a legitimate expectation that because he has subjected himself to the laws of one nation, other nations will not be entitled to exercise jurisdiction without some nexus." *Caicedo,* 47 F.3d at 372.

■ Accordingly, this Court rules that for exercise of jurisdiction over this offense to be reasonable under principles of international law, and to satisfy the requirements of the due process clause, a nexus between the criminal conduct alleged and the United States must be proved.

The government has stated that it has ample proof of a nexus between the defendants' conduct and the United States: that the defendants are United States citizens, that the United States was used as a base of operations, that a portion of the 1989 shipment was brought into the United States, and that a portion of the 1991 shipment was destined for the United States.

Nexus may be established by "proof that there is a connection between the criminal conduct and the United States sufficient to justify the United States' pursuit of its interests." *Caicedo,* 47 F.3d at 372. Put another way, "[t]o meet the nexus requirement, the government must show that the plan for shipping drugs was likely to have effects in the United States." *Khan,* 35 F.3d at 429. Evidence showing that drugs were ultimately bound for the United States is a sufficient nexus. *Caicedo,* 47 F.3d at 372 (citing *United States v. Peterson,* 812 F.2d 486, 493 (9th Cir.1987)). Nexus is also shown where an attempted transaction is aimed at causing criminal acts within the United States. *Davis,* 905 F.2d at 249. The citizenship of the defendants and the extent to which activity furthering the conspiracy took place on United States soil are also relevant factors in the nexus analysis. *See United States v. Rasheed,* 802 F.Supp. 312 (D.Haw.1992) (base of operations was United States mainland).

■ Obviously the defense and the prosecution are not in agreement over the facts alleged that would support nexus. Fed. R.Crim.P. 12(b) provides that "[a]ny defense, objection, or request which is capable of determination without the trial of the general

issue may be raised before trial by motion." A question of subject matter jurisdiction which involves issues of fact which may not be resolved without a trial of the general issue is not appropriate for decision pre-trial. *United States v. Ayarza–Garcia,* 819 F.2d 1043, 1048 (11th Cir.1987).

Furthermore, under 46 U.S.C.App. § 1903, jurisdiction may constitute a factual as well as a legal element of the crime, and therefore present an issue for jury determination. *Medjuck,* 48 F.3d at 1110–1111; *Martinez–Hidalgo,* 993 F.2d at 1057; *United States v. Piedrahita–Santiago,* 931 F.2d 127, 129 (1st Cir.1991); *Ayarza–Garcia,* 819 F.2d at 1048–49; *United States v. Medjuck,* 937 F.Supp. 1368, 1370–81 (N.D.Cal.1996); *United States v. Rojas,* 801 F.Supp. 644, 652 (S.D.Fla.1992), *aff'd,* 53 F.3d 1212 (11th Cir.), *cert. denied,* — U.S. ——, 116 S.Ct. 478, 133 L.Ed.2d 407 (1995). The Court therefore denies the motion to dismiss for lack of jurisdiction, but recognizes that the defendants may challenge the sufficiency of the evidence of nexus presented at trial.

## II. *Venue*

Title 46 U.S.C.App. § 1903(f) provides that "[a]ny person who violates this section shall be tried in the United States district court at the point of entry where that person enters the United States, or in the United States District Court of the District of Columbia." The defendants contend that the government cannot show that they entered the United States in the District of Vermont, and that therefore venue is improper in this district.

■ In considering this issue, the Eleventh Circuit persuasively reasoned that § 1903's venue provision was not intended to be exclusive, but to be construed "consistent with parallel provisions of existing law and their judicial interpretation." *United States v. Ahumedo–Avendano,* 872 F.2d 367, 372 (11th Cir.1989) (quoting from the House Report accompanying the MDLEA, H.R.Rep. No. 323, 96th Cong.2d Sess. (1980)). *See also United States v. Zabaneh,* 837 F.2d 1249, 1256 (5th Cir.1988); *United States v. Liles,* 670 F.2d 989, 991 (11th Cir.1982). The "parallel provision," establishing venue of of-

fenses not committed in any district, provides:

> The trial of all offenses begun or committed upon the high seas, or elsewhere out of the jurisdiction of any particular State or district, shall be in the district in which the offender ... is arrested or is first brought; but if such offender ... [is] not so arrested or brought into any district, an indictment or information may be filed in the district of the last known residence of the offender
>
> ...

18 U.S.C. § 3238 (1985). Venue is proper in the District of Vermont because all defendants were either arrested in, brought to, or resided in Vermont. Venue is also proper in the District of Vermont if any acts comprising the conspiracy to violate § 1903 were "begun, continued or completed" in Vermont. 18 U.S.C. § 3237(a) (1985). The motions to dismiss and to transfer for improper venue are therefore denied.

### III. *Void-for-Vagueness*

Defendant Greer has moved to dismiss Count 4 on the ground that 46 U.S.C.App. § 1903 is unconstitutionally vague as applied to him. To withstand a challenge of undue vagueness in violation of the due process clause of the Fifth Amendment, a statute must 1) give a person of ordinary intelligence a reasonable opportunity to know what is prohibited; and 2) provide explicit standards for those who enforce it. *Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222 (1972).

■ The statute declares in no uncertain terms that certain persons, those who are on board a vessel of the United States, or on board a vessel subject to the jurisdiction of the United States or who are United States citizens or resident aliens on board any vessel, are forbidden to knowingly or intentionally manufacture or distribute, or possess with intent to manufacture or distribute, a controlled substance. On its face it provides fair warning of what the law forbids to specifically defined categories of individuals. It likewise is not drafted so broadly as to offer opportunity for arbitrary or discriminatory enforcement. *See United States v. Aikins,* 946 F.2d at 613 (MDLEA not void for vague-

ness: it expressly prohibits possession of drugs on certain vessels with intent to distribute); *United States v. Smith,* 680 F.2d 255, 258 (1st Cir.1982) (MDLEA's predecessor statute not void for vagueness, where statute could hardly be more specific as to prohibited conduct); *United States v. Angola,* 514 F.Supp. 933, 935 (S.D.Fla.1981).

Greer would have the Court look beneath the plain language of the statute to ascertain the "true intent" of Congress, which, he contends, was only to punish persons on vessels which are boarded by the Coast Guard while they are on the high seas. There is no support in the language of the statute for this interpretation, and no ambiguity in the statutory language to justify examining extrinsic materials in search of Congressional intent. While it is true that most prosecutions under this statute have involved high seas boardings by the Coast Guard, the language of the statute itself provided fair warning to Greer that the conduct alleged in the indictment was prohibited.

### IV. *Equal Protection*

■ Defendant Greer also moved to dismiss the indictment on the ground that the statute violated the equal protection component of the due process clause of the Fifth Amendment. He contends that there is no rational basis to prosecute individuals who use ships rather than trucks or airplanes to transport controlled substances. To withstand an equal protection attack, the statute need only bear a rational relationship to a legitimate public purpose. *Plyler v. Doe,* 457 U.S. 202, 216, 102 S.Ct. 2382, 2394–95, 72 L.Ed.2d 786 (1982). Congress set forth its public purpose for this statute at 46 U.S.C.App. § 1902:

> The Congress finds and declares that trafficking in controlled substances aboard vessels is a serious international problem and is universally condemned. Moreover, such trafficking presents a specific threat to the security and societal well-being of the United States.

46 U.S.C.App. § 1902 (Supp.1996).

Section 1903 not only bears a rational relationship to this public purpose, it seeks di-

rectly to effectuate it. Greer appears to contend, however, that Congress's purpose is not legitimate, because it has arguably not devoted equal attention to legislating against other forms of trafficking transportation. In the absence of any compelling argument or authority that Congress has no legitimate purpose in condemning international trafficking in illegal drugs aboard ships, this Court will defer to the public purpose of the statute as expressed by Congress.

## CONCLUSION

For the reasons stated above, Defendants' motions to dismiss and for change of venue (papers 209, 216, 221, 224, 237 and 240) are denied.