

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-20-2002

# USA v. Perez-Oviedo

Precedential or Non-Precedential:

Docket 1-2512

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"USA v. Perez-Oviedo" (2002). *2002 Decisions.* Paper 137.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/137

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed February 20, 2002

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 01-2512

UNITED STATES OF AMERICA

v.

JOSE LUIS PEREZ-OVIEDO,

        Appellant

On Appeal from the District Court
of the Virgin Islands – St. Thomas
(D.C. Criminal No. 99-cr-00494)
District Judge: Hon. Thomas K. Moore

Argued December 4, 2001

BEFORE: BECKER, Chief Judge, NYGAARD and
COWEN, Circuit Judges

(Filed: February 20, 2002)

        Douglas J. Beevers, Esq. (Argued)
        Office of Federal Public Defender
        P.O. Box 1327
        51B Kongens Gade
        Charlotte Amalie, St. Thomas
        USVI, 00804

         Counsel for Appellant

Nelson L. Jones, Esq. (Argued)
Office of the United States Attorney
United States Courthouse
5500 Veterans Building, Suite 260
Charlotte Amalie, St. Thomas
USVI, 00802-6924

 Counsel for Appellee

OPINION OF THE COURT

COWEN, Circuit Judge:

I.

Jose Luis Perez-Oviedo ("Perez-Oviedo") agreed to be the captain of the Adriatik, a Panamanian registered vessel. In October of 1999, the Adriatik left the port of Cartagena, Colombia and arrived in Barranquilla, Colombia, where it was loaded with 800 tons of sugar. The ship left Barranquilla and at the mouth of the Magdalena River over 2 tons of cocaine were loaded from a fishing boat. The vessel then proceeded toward its intended final destination of Canada.

On November 11, 1999, the HMS Northumberland, on board which there was a United States Coast Guard law enforcement detachment, intercepted the Adriatik north of Trinidad and Tobago. Upon observing signs suggesting narcotics smuggling, a Statement of No Objection was requested from the Panamanian government for permission to search the Adriatik and, if need be, escort it to a United States port for an intrusive and destructive search. The Panamanian government granted the request.

The Adriatik arrived in the Virgin Islands on November 13, 1999. Prior to the search, Perez-Oviedo informed a Special Agent of the Coast Guard that the cocaine was located in the Number 3 starboard tank. A preliminary search revealed 400 kilograms of cocaine; a second search uncovered another 1700 kilograms.

An Information was filed, charging Perez-Oviedo with two violations of the Maritime Drug Law Enforcement Act ("MDLEA"): one count of knowingly and intentionally conspiring to distribute cocaine on board a vessel subject to the jurisdiction of the United States (in violation of 46 App. U.S.C. SS 1903(a) and 1903(j)) and one count of aiding and abetting to knowingly and intentionally possessing with the intent to distribute cocaine on board a vessel subject to the jurisdiction of the United States (in violation of 46 App. U.S.C. S 1903(a)). Perez-Oviedo pled guilty to the first count, preserving the issue of jurisdiction. See Fed. R. Crim. P. 11(a)(2). Prior to sentencing, a motion was filed to dismiss for lack of jurisdiction. The District Court denied the motion, and sentenced Perez-Oviedo to 120 months imprisonment.

II.

We have jurisdiction pursuant to 28 U.S.C. S 1291. The District Court had subject matter jurisdiction pursuant to 48 U.S.C. S 1612. See United States v. Martinez-Hidalgo, 993 F.2d 1052, 1054 n. 2 (3d Cir. 1993), cert. denied, 510 U.S. 1048, 114 S.Ct. 699 (1994); see also 18 U.S.C. S 3241. As to all issues on appeal we are dealing with the application of legal precepts to acknowledged facts, and therefore our standard of review is plenary. See Martinez-Hidalgo, 993 F.2d at 1054 n. 2.

Perez-Oviedo raises four issues on appeal: 1) whether there was a sufficient factual basis for the charge to which he pled guilty; 2) whether a nexus to the United States is an element of the charge; 3) whether the Due Process limits on jurisdiction were exceeded; and 4) whether the conviction and sentencing before an Article IV Court were unlawful where the allegations involved only Article I high seas offenses without any nexus to the Article IV territories.

III.

We address Perez-Oviedo's first two issues together, as our analysis of both is identical. Under the first issue, Perez-Oviedo argues that he lacked the requisite mens rea for conspiracy because he did not intend for the Adriatik or

3

the smuggled cocaine to have any connection to, or to fall within the jurisdiction of, the United States. He contends on the second issue that a nexus with the United States was required under international law. Both of these issues are disposed of by way of the statutory language contained in S 1903 and our prior holding in Martinez-Hidalgo. Id.

Sections 1903(a) and (j) of the MDLEA state:

>    (a) Vessels of United States or vessels subject to jurisdiction of United States

>     It is unlawful for any person on board a vessel of the United States, or on board a vessel subject to the jurisdiction of the United States, or who is a citizen of the United States or a resident alien of the United States on board any vessel, to knowingly or intentionally manufacture or distribute, or to possess with intent to manufacture or distribute, a controlled substance.

>    (j) Attempt or conspiracy

>     Any person who attempts or conspires to commit any offense defined in this chapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

In Martinez-Hidalgo, we held that the District Court had jurisdiction to adjudicate the criminal charges despite the fact that the vessel in question had no nationality (Colombia had disclaimed its registry of the vessel) and the final destination for the drugs was likely to be Puerto Rico or St. Croix. Id. at 1055. The critical factual distinction to be made in Perez-Oviedo's case is that the Adriatik did have nationality, it was registered in Panama. Since Panama consented to the search of the Adriatik, we hold that the government satisfied its jurisdictional requirements under the MDLEA.1

_____

1. Section 1903(c)(1)(C) provides that:

>    (1) For purposes of this section, a "vessel subject to the jurisdiction
of the United States" includes--

4

While the issue previously has not been squarely before us, we explained in Martinez-Hidalgo that our holding in that case did not depend upon the vessel being stateless. We stated that "our holding obviously applies to any prosecution under the Maritime Drug Law Enforcement Act." Martinez-Hidalgo, 993 F.2d at 1056 n.6. We acknowledged in our discussion that our holding in Martinez-Hidalgo was not joining the holding of the Court of Appeals for the Ninth Circuit in United States v. Davis, 905 F.2d 245, 248-49 (9th Cir. 1990), cert. denied , 498 U.S. 1047, 111 S.Ct. 753 (1991), which read into the MDLEA a nexus requirement with respect to foreign-registered vessels.

In holding that there was no nexus requirement in the MDLEA, we refused to distinguish Martinez-Hidalgo from Davis on the basis of whether the ship involved was stateless or actually registered in another country. Martinez-Hidalgo, 993 F.2d at 1056; see also Klimavicius-Viloria, 144 F.3d 1249, 1257 (9th Cir. 1998) (government must prove that criminal conduct will have an effect in the United States). Our conclusion rested upon the fact that "46 U.S.C. app. S 1903(d) expresses the necessary congressional intent to override international law to the extent that international law might require a nexus to the United States for the prosecution of the offenses defined in the [MDLEA]." 993 F.2d at 1056.

Other Courts of Appeal have likewise taken issue with the holding in Davis. They have held that no nexus is needed between a defendant's criminal conduct and the United States in order for there to be jurisdiction, even

_____

(C) a vessel registered in a foreign nation where the flag nation has consented or waived objection to the enforcement of United States law by the United States.

Consent or waiver of objection by a foreign nation to the enforcement of United States law by the United States under subparagraph (C) . . . of this paragraph may be obtained by radio, telephone, or similar oral or electronic means, and is conclusively proved by certification of the Secretary of State or the Secretary's designee.

when the vessel at issue is registered in a foreign country (as opposed to being stateless). See, e.g., United States v. Bustos-Useche, 273 F.3d 622, 627-28 (5th Cir. 2001) (because Panama consented to the enforcement of the MDLEA over the vessel, the jurisdictional requirements of the statute were met, despite the timing of the consent after the vessel was commandeered by the Coast Guard); United States v. Greer, 223 F.3d 41, 54-56 (2nd Cir. 2000) (MDLEA's jurisdictional requirement satisfied so long as consent of nation to which vessel is registered is received prior to trial); United States v. Cardales, 168 F.3d 548, 553 (1st Cir. 1999), cert. denied, 528 U.S. 838, 120 S.Ct. 101 (1999) (acknowledging the holding of the Court of Appeals for the Ninth Circuit in Davis but nevertheless holding that the United States had jurisdiction despite the fact that the vessel was registered in Venezuela). Perez-Oviedo's first two issues are without merit. The vessel's final destination of Canada and lack of a nexus to the United States are wholly irrelevant to our analysis of the jurisdiction of the United States to prosecute him under the MDLEA given that the Panamanian government consented to the search.

With regard to Perez-Oviedo's third issue, we previously held in Martinez-Hidalgo that no due process violation occurs in an extraterritorial prosecution under the MDLEA when there is no nexus between the defendant's conduct and the United States. Martinez-Hidalgo, 993 F.2d at 1056-57. Since drug trafficking is condemned universally by law-abiding nations, we reasoned that there was no reason for us to conclude that it is " `fundamentally unfair' for Congress to provide for the punishment of a person apprehended with narcotics on the high seas." Id. at 1056; see also 46 App. U.S.C. S 1902 (where Congress specifically found in the MDLEA that "trafficking in controlled substances aboard vessels is a serious international problem and is universally condemned"). Perez-Oviedo's state of facts presents an even stronger case for concluding that no due process violation occurred. The Panamanian government expressly consented to the application of the MDLEA (unlike the stateless vessel in Martinez-Hidalgo). Such consent from the flag nation eliminates a concern that the application of the MDLEA may be arbitrary or fundamentally unfair. See, e.g., Cardales, 168 F.3d at 553.

Perez-Oviedo's reference to cases such as International Shoe Machine Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154 (1945), and Asahi Metal Industry Co., Ltd. v. Superior Court of California, 480 U.S. 102, 107 S.Ct. 1026 (1987), is unavailing, for those cases, which deal with non-resident corporations subject to liability for placing goods in the stream of commerce of another state, are inapposite.

Perez-Oviedo's fourth issue can be disposed of in short order. In United States v. Canel, 708 F.2d 894, 897 (3d Cir. 1983), we declined to hold that only an Article III judge could preside over the trial where the charge was a violation of the criminal law of the United States. We also held that no due process violation occurs when the trial of a criminal charge takes place before a judge enjoying the limited tenure afforded to judges of the District Court of the Virgin Islands. Id. Perez-Oviedo's position that his conviction and sentencing before an Article IV Court was unlawful because the allegations involved only Article I high seas offenses without any nexus to the Article IV territories also fails.

IV.

For the foregoing reason, the District Court's judgment of June 8, 2001 will be affirmed in all respects.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit