NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-3676
_____

GOVERNMENT OF THE VIRGIN ISLANDS

v.

GENT MOSBY,
Appellant
_____

On Appeal from the Appellate Division of the
District Court of the Virgin Islands
District Court  No. 3-97-cr-00015-001
District Judge: The Honorable Raymond L. Finch
District Judge: The Honorable Legrome D. Davis
Superior Court Judge: The Honorable Patricia D. Steele

Argued December 3, 2012

Before: SMITH, HARDIMAN, and ROTH, *Circuit Judges*

(Filed: January 30, 2013 )

Pamela R. Tepper          ARGUED
Office of Attorney General of Virgin Islands
Department of Justice
34-38 Kronprindsens Gade
GERS Complex, 2nd Floor
St. Thomas, VI  00802
        *Counsel for Plaintiff-Appellee*

Samuel A. Walker          ARGUED
201 East Pine Street

1

Suite 445
Orlando, FL  32801
    *Counsel for Defendant-Appellant*

_____

## OPINION
_____

SMITH, *Circuit Judge.*

In August of 1996, a jury found Gent Mosby guilty of the March 26, 1994 murder of Officer Steven Hodge. On this direct appeal, he challenges his convictions on constitutional, evidentiary, and procedural grounds. We will affirm.

I

Officer Steven Hodge's murder took place shortly after 11:00 pm on March 26, 1994. He was shot fourteen times by at least two people using four different guns. Police found only one piece of physical evidence at the scene, a towel with gun residue. It was found near a bush close to Officer Hodge's home and appeared to have been recently placed there.

Earlier on the day of the murder, two witnesses saw Mosby with two of his codefendants—Carl Fleming and Ricky Vanterpool—at a store Mosby ran called New York's Latest Fashions. One of these witnesses, Gwentin Sellwood, testified at trial that he saw them there and that he saw Mosby remove three guns from a paper bag, two of which he handed to Fleming and Vanterpool. Sellwood also saw a long gun with a damaged handle on the counter behind Mosby. On the back of a

2

chair near Mosby, he saw a towel similar to the one found near the crime scene. Finally, Sellwood also heard Mosby tell his codefendants that he would pick them up at 11:30 pm so that they could take care of "serious business." The other witness, Vincent Daniel, also visited the store and saw Mosby with Vanterpool. While Daniel was there, he heard the "cranking of a gun" from the bathroom.

Witnesses Bernice Celestine, Eustace Sorhaindo, and Shorn Pennyfeather all heard gun shots the evening of the murder and saw four men dressed in black near Officer Hodge's home shortly before or after his murder. Only Sorhaindo was able to identify at trial any of the four men he saw. He identified Mosby and another codefendant, Pedro Harris. He later recanted his identification of Harris, but he never withdrew his identification of Mosby.

Two days after the murder, Sellwood again encountered Mosby. This time, Mosby had just been questioned by police about the murder of a police officer. Sellwood helped Mosby clean out New York's Latest Fashions store and heard him exclaim several times that he would not go to jail. Several months later, Sellwood encountered Mosby, Fleming, and Vanterpool. Mosby pointedly stopped Sellwood on the street to tell him that "whatsoever you hear in the store or whatsoever you see in the store, don't ever leave me hear it or otherwise me and the boys them will take you out."

Mosby offered two defenses at trial. First, he tried to provide an alibi for the evening of the murder by explaining that he was at strip clubs. Second, he claimed that the murder was committed by corrupt Virgin Islands police officers who knew that Officer Hodge was about to report them. In support of this second defense, Mosby offered a recording in which a person involved in the drug business allegedly explained to a confidential informant ("CI") that Virgin Islands police officers had approached him to hire a contract killer to murder Officer Hodge. The person in the recording was allegedly Vargas Paniagua, who purportedly assisted in the murder because Officer Hodge owed Paniagua cocaine money. Despite Mosby's attempts, Paniagua was not produced to testify at trial, the recording was not admitted into evidence, and the CI's identity was not revealed.

On August 19, 1996, in the Virgin Islands Superior Court,[1] a jury found Mosby guilty of first-degree murder, conspiracy to commit murder, unauthorized possession of a firearm, and threatening a witness. On November 16, 1996, the Superior Court denied Mosby's motion for a judgment of acquittal or, in the alternative, a new trial. He then filed a timely appeal to the Appellate Division of the Virgin Islands District Court. *Mosby v. Gov't of Virgin Islands*, No. 1997-0015-1, 2011 WL 4357301, at *3 (D.V.I. Sept. 16, 2011) (per curiam). After an

---

[1] At the time of trial, the trial court was known as the Territorial Court. Starting in October 2004, the Territorial Court became known as the Superior Court. We will refer to the trial court as the Superior Court.

unexplained fifteen-year delay, the Appellate Division affirmed Mosby's conviction on January 22, 2010. *Mosby*, 2011 WL 4357301, at *3. Mosby then filed a timely appeal to this Court.

The Appellate Division had jurisdiction to hear Mosby's appeal pursuant to 48 U.S.C. § 1613a(a) and (d). We review the Superior Court's rulings using the same standards of review as those employed by the Appellate Division. *Semper v. Santos*, 845 F.2d 1233, 1236 (3d Cir. 1988); *Gov't of Virgin Islands v. Lewis*, 620 F.3d 359, 364 & n.4 (3d Cir. 2010).

II

Mosby challenges his conviction on five grounds.[2] Three arguments relate to the Paniagua tape recording. Mosby argues that the Superior Court violated his Sixth Amendment right to compulsory process when it denied his motion for a writ of habeas corpus ad testificandum requiring Paniagua to testify, that the Superior Court erred by determining that the tape was inadmissible hearsay, and that the Superior Court was incorrect to deny his motion to disclose the identity of the CI

---

[2] Mosby also suggests that Sorhaindo's in-court and out-of-court identifications should have been suppressed. He fails, however, to provide any legal basis for his in-court identification argument or accurate record citations for his out-of-court-identification argument. Accordingly, these arguments have not been properly presented and will not be addressed. *See Kost v. Kozakiewicz*, 1 F.3d 176, 182–83 (3d Cir. 1993); *Rebuck v. Vogel*, 713 F.2d 484, 487 (8th Cir. 1983). Mosby's change of venue argument is similarly flawed because he fails to provide any legal or factual support for the argument.

who recorded the conversation. Besides the Paniagua-related arguments, Mosby makes two additional arguments. First, he argues that the testimony of Athnell Coker violated the rule of *Bruton v. United States*, 391 U.S. 123 (1968), because it contained the confession of one of Mosby's codefendants, Maurice Richardson, that impermissibly implicated Mosby. Second, he argues that the transcript of Sorhaindo's testimony should have been read back to the jury in its entirety, even though they requested only a portion of it. None of these arguments have merit.

Mosby's Sixth Amendment right to compulsory process was not violated because Paniagua's testimony would not have been favorable. *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867–68 (1982). To assert this Sixth Amendment right to produce a witness, a defendant must show (among other things) "that the excluded testimony would have been material and favorable to his defense." *Gov't of Virgin Islands v. Mills*, 956 F.2d 443, 446 (3d Cir. 1992) (citing *Rock v. Arkansas*, 483 U.S. 44, 56 (1987)). Mosby argues that Paniagua's testimony would have been material and favorable because the tape allegedly showed that if Paniagua were to testify truthfully, then he would explain that he was approached by Virgin Islands police officers who wanted his help to hire a contract killer to murder Officer Hodge. During a pretrial proceeding, however, Paniagua denied under oath that he participated in the conversation recorded or a conversation similar to it. Mosby thus failed to show that Panaigua's testimony at trial would

have been favorable or material.

Mosby contends that the required showing would have been met if he had been given a chance to confront Paniagua's denial of involvement in the murder with the recording, which the parties agree constitutes hearsay. We are not persuaded. The favorability determination must be based on a witness's actual testimony and admissible evidence. This is so because defendants cannot circumvent the rules of evidence by calling witnesses solely to impeach them with evidence that would otherwise be inadmissible. *United States v. Sebetich*, 776 F.2d 412, 428–29 (3d Cir. 1985). The Superior Court therefore did not violate Mosby's Sixth Amendment right to compulsory process by refusing to compel Paniagua's testimony.[3]

The Superior Court also did not err in concluding that the tape was not admissible under either Federal Rule of Evidence 804(b)(3) as a statement against

---

[3] Similarly, the Superior Court's denial of Mosby's motion for a writ of habeas corpus ad testificandum was not an abuse of discretion. *See United States v. Cruz-Jiminez*, 977 F.2d 95, 99 (3d Cir. 1992) (explaining that our standard of review for denials of the writ of habeas corpus ad testificandum is for abuse of discretion). This writ may be denied if "the witness's testimony is only peripherally relevant . . . ." *Id.* at 100. Paniagua's denial of his participation in the conversation is not relevant at all because it would not make any "fact more or less probable." Fed. R. Evid. 401(a). That the Superior Court's denial of Mosby's motion was a reversal of its initial decision to grant it is also not an abuse of discretion because trial judges are permitted to test the proffered evidence used to support a motion. *See Luce v. United States*, 469 U.S. 38, 41 (1984).

interest or the residual exception in Rule 807.[4] This decision was not an abuse of discretion because the tape was inadequately substantiated by other evidence. *See United States v. Starnes*, 583 F.3d 196, 213–14 (3d Cir. 2009) (explaining that we review admissibility rulings for abuse of discretion). For a statement to be admitted under either of these exceptions, the statement's content and context must demonstrate its trustworthiness. *United States v. Boyce*, 849 F.2d 833, 835–36 (3d Cir. 1988) (explaining that trustworthy circumstances is one of two requirements for the statement against interest exception to apply); *United States v. Bailey*, 581 F.2d 341, 346–47 (3d Cir. 1978) (explaining that the residual exception can be used when trustworthiness and "high degrees of probativeness and necessity are present"). The record supports the Superior Court's conclusion that the statements on the tape were untrustworthy. There is simply no evidence to support the tape's suggestion that a hit man was brought to the Virgin Islands. If anything, the evidence at trial suggests that a hit man was *not* involved because of the multiple guns used in the killing. Mosby does not explain why the officers would pay a hit man $50,000 to join them in murdering a police officer, rather than to simply kill the officer himself.

Furthermore, the record does not provide any reason to conclude that the

---

[4] The Superior Court's ruling refers to Federal Rule of Evidence 804(b)(5), which was the location of the residual exception at the time of the trial. The exception now appears in Rule 807.

Superior Court was clearly unreasonable in determining that the circumstances did not indicate trustworthiness. There is evidencing supporting the conclusion that the CI was financially motivated to fabricate evidence and had been an unreliable informant in the past. Furthermore, the tape does show that Paniagua's statement was not spontaneous and was made when he had reason to enhance his criminal reputation to the CI by sounding "all powerful." Accordingly, the Superior Court's ruling that the statements on the tape were inadmissible hearsay was not an abuse of discretion.

Mosby's final Paniagua-related argument is that the identity of the CI, known as SKS, should have been disclosed so that Mosby could authenticate the statements on the tape. We review the Superior Court's denial of Mosby's motion to disclose SKS's identity for abuse of discretion. *United States v. Johnson*, 302 F.3d 139, 149 (3d Cir. 2002). A defendant is generally not entitled to the identity of a CI when "the informant was not an active participant or eyewitness, but rather a mere tipster" to the reported offense. *United States v. Jiles*, 658 F.2d 194, 197–98 (3d Cir. 1981). Here, SKS was very similar to a tipster because he had no role in the murder of Officer Hodge and only happened upon the information in the tape as a part of an unrelated drug investigation. SKS thus could not provide any information beyond what was already on the tape, thereby rendering his identity of minimal value to the preparation of Mosby's defense. *Cf. Roviaro v. United States*,

9

353 U.S. 53, 62 (1957) (explaining that disclosure of confidential informants' identities is guided by the balancing of "the public interest in protecting the flow of information against the individual's right to prepare his defense"). The Superior Court's denial of Mosby's request to disclose SKS's identity was not, therefore, an abuse of discretion.

Aside from the issues relating to Paniagua, Mosby also challenges the testimony of Athnell Coker. Coker recounted the confession of one of Mosby's codefendants, Maurice Richardson, who did not testify at trial. Coker testified that "they went down Lindberg Bay in the bushes and stake out and waited until Hodge came out of his house and shoot him." Mosby argues that Coker's use of "they" impermissibly implicated him in violation of his Sixth Amendment right to confrontation. *See Bruton*, 391 U.S. at 136–37. Mosby also argues that the same improper implication resulted from both the prosecutor's unanswered questions regarding the number of people and types of guns involved and in his closing argument that reformulated Coker's statement. These arguments are meritless.

In *Bruton*, the Supreme Court held that the prosecutor's introduction into evidence of a nontestifying codefendant's confession violates a defendant's right under the Confrontation Clause when "there is a strong implication that the non-testifying codefendant's confession refers to the defendant." *Pabon v. Mahanoy*, 654 F.3d 385, 393 (3d Cir. 2011). The use of "they" here is not sufficient to create

10

an unconstitutionally strong implication. At no point in the testimony does Coker identify or mention the activities of other people in the crime, much less imply that Mosby was involved. Furthermore, the Superior Court properly stopped Coker from answering the prosecutor's questions about the number of people and the number of guns. This prevented any possible implication that Coker's use of "they" referred to the other defendants in the courtroom. *Cf. United States v. Richards*, 241 F.3d 335, 340–41 (3d Cir. 2001) (finding a *Bruton* violation when the redaction of the codefendant's confession "sharply incriminated" the nonconfessing defendant). And though the prosecutor may have suggested in his closing statement that Richardson meant Mosby when he said "they," this is insufficient because the testimony and other evidence left open other possible inferences that the jury was free to make. *See Priester v. Vaughn*, 382 F.3d 394, 399 (3d Cir. 2004). Coker's testimony, therefore, did not violate Mosby's Sixth Amendment right to confrontation as understood in *Bruton*.

Mosby's final argument is that the Superior Court erred by reading back only the portion of Sorhaindo's testimony that the jury requested, rather than Sorhaindo's entire testimony. Trial courts have broad discretion in deciding which portions of testimony to reread to a jury upon its request. *United States v. Wright-Barker*, 784 F.2d 161, 174 (3d Cir. 1986), *superseded on other grounds by statute as recognized in United States v. Martinez-Hidalgo*, 993 F.2d 1052, 1056 (3d Cir.

1993). District courts do not abuse this discretion by limiting the part read back to the part requested by the jury, even though the defendant may have wanted more read. *Wright-Barker*, 784 F.2d at 174. Here, the Superior Court read only that portion requested by the jury, which even Mosby's trial counsel recognized was all that was required. The Court did not, therefore, abuse its discretion.

III

For these reasons, we will affirm Mosby's convictions.