IN THE SUPREME COURT
OF THE VIRGIN ISLANDS

**FILED**

May 06, 2024 02:20 PM
SCT-CIV-2020-0029
VERONICA HANDY, ESQUIRE
CLERK OF THE COURT



**For Publication**

## IN THE SUPREME COURT OF THE VIRGIN ISLANDS

| | |
|---|---|
| **EUPHITA O. HACKETT,**<br>Appellant/Defendant, | ) **S. Ct. Civ. No. 2020-0029**<br>) Re: Super. Ct. Civ. No. 538/2002 (STX) |
| | ) |
| v. | ) |
| | ) |
| **HARRIETT L. SASSO,**<br>Appellee/Plaintiff. | ) |
| | ) |

On Appeal from the Superior Court of the Virgin Islands
Division of St. Croix
Superior Court Judge: Hon. Douglas A. Brady

Considered: June 14, 2022
Filed: May 6, 2024

Cite as: 2024 VI 21

**BEFORE:** **MARIA M. CABRET**, Associate Justice; **IVE ARLINGTON SWAN**, Associate Justice; and **RENEE GUMBS CARTY**, Designated Justice.[1]

**APPEARANCES:**

**Yvette Ross-Edwards, Esq.**[2]
Law Offices of Yvette D. Ross-Edwards
St. Croix, U.S.V.I.
    *Attorney for Appellant.*

**Mark L. Milligan, Esq.**
Law Offices of Mark Milligan
St. Croix, U.S.V.I.
    *Attorney for Appellee.*

### OPINION OF THE COURT

---

[1] Chief Justice Rhys S. Hodge has recused himself from this matter. The Honorable Renee Gumbs Carty sits in his place by designation pursuant to title 4, subsection 24(a) of the Virgin Islands Code.

[2] Judge Yvette Ross-Edwards was elevated to the bench and confirmed as a Judge in the Superior Court of the Virgin Islands, before the full senate, on June 14, 2023. Judge Ross-Edwards was sworn in on August 14, 2023. Attorney Kye Walker was substituted as counsel for the Appellant on July 31, 2023.

**CABRET, Associate Justice.**

¶1     Appellant Euphita Hackett appeals the Superior Court's April 8, 2020 amended judgment order entering judgment in favor of Appellee Harriett Sasso and ordering Hackett to reimburse Sasso for the property taxes Sasso paid on a plot of land designated as Plot 5-U, Estate Upper Love, Prince Quarter, Frederiksted, St. Croix ("Plot 5-U"). For the following reasons, we affirm the judgment of the Superior Court.

## I.    BACKGROUND

¶2     In 1972, Hackett purchased land known as Plot 5-T, Estate Upper Love, Prince Quarter, Frederiksted, St. Croix ("Plot 5-T") with her now deceased husband. The following year, Hackett began constructing a family home on what she thought was Plot 5-T, but in reality Hackett had mistakenly begun construction on Plot 5-U, the adjacent lot. Hackett completed construction of the home in 1980 and has resided on Plot 5-U since the home's completion. In 1998, Sasso was devised Plot 5-U by an adjudication in the probate of Josephine Blackwell's estate.[3] During the course of probate, Sasso had Plot 5-U surveyed, revealing Hackett's residence on the property. Despite Sasso obtaining title to Plot 5-U in 1998, neither she nor any of her predecessors ever questioned Hackett's possession or occupancy of Plot 5-U for well over fifteen years. While Sasso purportedly notified Hackett in late 1997 or 1998 that she was wrongfully residing on Plot 5-U, Hackett continued residing on Plot 5-U and Sasso and her predecessors continued to pay the property taxes on Plot 5-U.[4]

---

[3] Blackwell was the sole owner of Plot 5-U prior to Sasso.

[4] While receipts of Sasso's property tax payments are not contained in the record, we defer to the Superior Court's reasoning that "Sasso and her predecessors paid property taxes on Plot 5-U for several years, which payments have redounded to the benefit of Hackett."

¶3      In 2002, Sasso initiated a quiet title action in the Superior Court in order to determine ownership of Plots 5-U and 5-T. Hackett answered Sasso's complaint, raising adverse possession as an affirmative defense and later amended her answer to include a counterclaim for adverse possession. Hackett then moved for summary judgment as to her ownership of Plot 5-U by adverse possession. In 2004, the Superior Court determined that Hackett had satisfied all adverse possession statutory requirements and awarded her ownership of Plot 5-U. Sasso appealed the Superior Court's 2004 memorandum opinion and order to the Appellate Division of the District Court of the Virgin Islands ("Appellate Division").[5] In 2006, the Appellate Division affirmed the Superior Court's decision that Hackett became the owner of Plot 5-U by adverse possession but remanded the case with the limiting instructions to "clarify the precise property affected and to do equity." The Appellate Division specifically instructed that "the [Superior Court] should determine whether it is fair for Sasso to take nothing, given her payment of property taxes on Plot 5-T, and for Hackett to take both Plots 5-U and 5-T."

¶4      On April 8, 2020, the Superior Court entered an amended judgment and memorandum opinion resolving the questions presented for remand. In its opinion, the Superior Court denied awarding Sasso an equitable conveyance of Plot 5-T because "[t]o grant such relief would be to reward the inattentiveness and disregard exhibited by Sasso and her predecessors over two decades with regard to the property deeded to them in 1972." Nevertheless, the Superior Court found that the interests of equity supported reimbursing Sasso for the property taxes she paid on Plot 5-U

---

[5] "The Supreme Court [of the Virgin Islands] officially assumed appellate jurisdiction over appeals from the Superior Court on January 29, 2007," thus "the Appellate Division's appellate jurisdiction over Superior Court decisions is limited to appeals filed prior to January 29, 2007." *Hypolite v. People*, 51 V.I. 97, 101 (V.I. 2009). Sasso filed her appeal on June 25, 2004 from the Superior Court's June 24, 2004 decision, therefore, the Appellate Division was the designated appellate court for the Territory at the time of her appeal. See *Richards v. People*, 74 V.I. 539, 543 (V.I. 2021).

because these payments "redounded to the benefit of Hackett." The Superior Court also imposed pre- and post-judgment interest on the recovery of this reimbursement. Hackett timely filed this appeal on May 8, 2020.[6]

## II.    JURISDICTION AND STANDARD OF REVIEW

¶5    This Court "[has] jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." V.I. CODE ANN. tit. 4, § 32(a); *Pelle v. Certain Underwriters at Lloyd's of London*, 66 V.I. 315, 318 (V.I. 2017). A final order conclusively adjudicates all disputes between the parties, ends the litigation on the merits, and leaves nothing to do but execute the judgment. See *Guardian Ins. Co. v. Knight*, 75 V.I. 345, 349 (V.I. 2021); *see also In re Joseph*, 65 V.I. 217, 222 (V.I. 2016). Because the Superior Court's April 8, 2020, amended judgment and order "conclusively adjudicated all disputes between the parties, it is a final order within the meaning of 4 V.I.C. § 32(a)." *Brathwaite v. Xavier*, 71 V.I. 1089, 1095 (V.I. 2019).

¶6    "[This Court's] standard of review in examining the Superior Court's application of law is plenary, while findings of fact are reviewed only for clear error." *Alexander v. Alexander*, 65 V.I. 372, 377 (V.I. 2016) (citing *Santiago v. V.I. Housing Auth.*, 57 V.I. 256, 263 (V.I. 2012)). This Court also retains plenary power to determine whether the Superior Court stayed within the scope of a reviewing court's mandate. *See Caribbean Healthways, Inc. v. James*, 59 V.I. 805, 810 (V.I. 2013). The Superior Court's decision to grant or deny equitable remedies is reviewed for abuse of

---

[6] Sasso filed a Notice of Appeal on May 6, 2020; however, this Court dismissed her appeal on April 22, 2022 after failing to timely submit her appellate brief by the April 28, 2021 deadline extended by this Court's amended scheduling order. Sasso also failed to file a response brief to this appeal.

discretion. *See Sam's Food Distribs., Inc. v. NNA&O, LLC*, 73 V.I. 453, 459 (V.I. 2020); *see also V.I. Taxi Ass'n v. V.I. Port Auth.*, 67 V.I. 643, 661 (V.I. 2017). "An abuse of discretion involves a finding of clearly erroneous fact, an errant conclusion of law, or an improper application of law to fact." *Suid v. Law Off. of Karin A. Bentz, P.C.*, 75 V.I. 272, 276-77 (V.I. 2021).

## III.   DISCUSSION

### A.  Scope of Remand

¶7      Hackett contends that the Appellate Division intended to limit the scope of remand to the equities concerning property tax payments on Plot 5-T, and not Plot 5-U. Hackett specifically argues the Superior Court erred when it "wrongfully exceeded the scope of remand, and in so doing erroneously concluded that Sasso should be reimbursed property taxes for a plot which the Appellate Division excluded from consideration of the equities." We disagree.

¶8      Generally, "issues outside the scope of the remand are ... not available for consideration." *Rawlins v. People.*, 59 V.I. 1069, 1072 (V.I. 2013) (quoting *United States v. Walterman*, 408 F.3d 1084, 1085-86 (8th Cir. 2005)); *Williams v. People*, 58 V.I. 341, 354-55 (V.I. 2013) (the Superior Court's amended judgment was vacated for failing to follow instructions on remand); *Caribbean Healthways*, 59 V.I. at 812 (the Superior Court's failure to follow a mandate on remand required reversal).

¶9      Here, the Appellate Division instructed as follows:

> [A]lthough we conclude the [Superior Court] did not err in determining that Hackett became the adverse owner of certain property, we must remand this matter with instructions to clarify the precise property affected and to do equity. In considering the equities of the case, the trial court should determine whether it is fair for Sasso to take nothing, given her payment of taxes on Plot 5-T, and for Hackett to take both Plots 5-U and 5-T.

> [W]e will remand this matter to the [Superior Court] to identify or designate the precise area of property affected and the equities of permitting Hackett to take possession of both Plots 5-U and 5-T while Sasso takes nothing.

In addressing the Appellate Division's mandate, the Superior Court explained that "the Appellate Division's Memorandum Opinion incorrectly states that Sasso paid property taxes on Plot 5-T" while "[t]he record reflects that Sasso and her predecessors actually paid real property tax bills...for... Plot 5-U." Despite the Appellate Division's statement that Sasso paid property taxes on Plot 5-T, we conclude this statement was a single typographical error as the Appellate Division correctly referred to Plot 5-U, or the property of the Josephine Blackwell estate, throughout its opinion. Because Sasso paid property taxes on Plot 5-U, rather than Plot 5-T, it makes little sense that the Appellate Division intentionally referred to Sasso's property tax payments on Plot 5-T when in fact she never paid any property taxes for Plot 5-T.

¶10 Moreover, the instructions of the Appellate Division expressly refer to *both* Plot 5-U and Plot 5-T. The Appellate Division did not limit its mandate of equitable considerations to only one plot. Rather, the mandate granted the Superior Court broad discretion to consider the equities as they pertained to both plots and the parties. In its April 8, 2020, amended judgment order, the Superior Court clearly stayed within the Appellate Division's mandate by acknowledging the limited scope of remand and only deciding issues of equity. This is supported by the fact that the Superior Court denied revisiting the merits of Hackett's adverse possession claim at Sasso's request because the record was remanded for "limited purposes." (*See* April 8, 2020, Memorandum Opinion ¶ 8). Therefore, Hackett's argument, which hinges upon the Appellate Division's singular incorrect reference to the wrong plot, is unavailing against the backdrop of the entirety of the record reflecting Sasso's Plot 5-U property tax payments. This Court finds that the Superior Court remained within the Appellate Division's mandate.

## B. Reimbursement of Property Taxes

¶11    Next, Hackett argues that Sasso is not entitled to an equitable reimbursement for property taxes she paid on Plot 5-U. Hackett asserts that the reimbursement of Plot 5-U property taxes for a period when Sasso and her predecessors were legally obligated to pay conferred no benefit on Hackett and penalized Hackett by creating a windfall for Sasso. We disagree.

¶12    "[T]he Superior Court of the Virgin Islands — like almost all modern American courts — exercises both equitable and legal authority." *3RC & Co. v. Boynes Trucking Sys.*, 63 V.I. 544, 553 (V.I. 2015). When exercising its equitable authority, the Superior Court has "the power to fashion *any* remedy deemed necessary and appropriate to do justice in [a] particular case." *Id.* (quoting *Kalloo v. Estate of Small*, 62 V.I. 571, 584 (V.I. 2015)) (emphasis added). For this reason, the Superior Court "has a great deal more flexibility in considering equitable remedies than it does in considering legal remedies." *3RC & Co.*, 63 V.I. at 553. That being said, equitable remedies are "inappropriate where a legal remedy is available." *Cacciamani & Rover Corp. v. Banco Popular de P.R.*, 61 V.I. 247, 252 (V.I. 2014). This is because courts of equity were developed "to provide relief that was unavailable in courts of law." *3RC & Co.*, 63 V.I. at 553. "[T]he division between law and equity remains meaningful to defining the remedies available in a particular action." *Id.*

¶13    In the instant case, the Superior Court was instructed to "do equity" as it pertained to the plots involved here, and the parties. These instructions, coupled with the Superior Court's broad equitable authority, allowed the Superior Court to fashion almost any remedy it deemed appropriate to achieve justice. Here, the Superior Court determined that justice would be best served by awarding Sasso an equitable reimbursement for the taxes she paid on Plot 5-U and we agree with that assessment.

¶14    First, the Superior Court was acting as a court of equity on remand, not a court of law. As stated above, courts of law and courts of equity are meaningfully distinct, and are governed by different principles. The primary function of the Superior Court acting in its equitable capacity is to determine what is fair considering the circumstances. Here, Sasso was the titleholder of Plot 5-U from 1998 until 2004, when the Superior Court awarded Hackett ownership of the property through adverse possession. Thus, during that time period, Hackett would have been obligated to pay the property taxes on Plot 5-U, yet Sasso and her predecessors had already paid them. Therefore, the Superior Court determined that a reimbursement of the funds expended for property taxes would best compensate Sasso. In adherence to the Appellate Division's mandate to not disturb Hackett's adverse possession award on remand, the Superior Court, within its broad discretion, fashioned an equitable remedy to reimburse the property taxes paid by Sasso.

¶15    Nor does the Superior Court's decision requiring Hackett to reimburse Sasso result in a "windfall" for Sasso. Here, Hackett had been residing on Plot 5-U since 1980 and obtained ownership of Plot 5-U by adverse possession in 2004, yet never paid any property taxes on Plot 5-U. Hackett, despite knowing that Sasso was the true devisee of Plot 5-U, continued to allow Sasso and her predecessors to pay the Plot 5-U property taxes (*i.e.*, for the years 1988, 1991, 1992, 1994, 1998, 1999, and 2001). Therefore, it is entirely fair and equitable that Hackett must reimburse Sasso for property taxes Sasso paid on the land Hackett now owns.

## IV.    CONCLUSION

¶16    The Superior Court remained within the scope of the Appellate Division's mandate by clarifying that Plot 5-U was the disputed property and determining that a reimbursement for property taxes paid by Sasso would achieve the most equitable result. Because the Superior Court

weighed the interests, actions, and equities of both parties to reach a fair result, it did not abuse its

discretion in awarding Sasso an equitable reimbursement for the property taxes paid. We therefore

affirm the Superior Court's April 8, 2020 amended judgment order.

Dated this 6th day of May, 2024.

BY THE COURT:

**MARIA M. CABRET**
**Associate Justice**

ATTEST:

**VERONICA J. HANDY, ESQ.**
**Clerk of the Court**

By: **/s/ Reisha Corneiro**
**Deputy Clerk**

Dated: **May 6, 2024**