

**FILED**
June 06, 2025 08:58 AM
ST-2018-MC-00035
**TAMARA CHARLES**
**CLERK OF THE COURT**

**IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS AND ST. JOHN**

MAURICE RICHARDSON, )
)
              Petitioner, ) CIVIL NO. ST-2018-MC-00035
)
       vs. )
)
WYNNIE TESTAMARK, DIRECTOR BUREAU OF )
PRISONS,[1] )
)
           Respondent. )
)
_____ )

**Cite as: 2025 VI Super 15U[2]**

**Appearances:**

RICHARD HARDGREAVES DOLLISON, ESQUIRE[3]
LAW OFFICES OF RICHARD H. HOLLISON, P.C.
St. Thomas, VI
*For Petitioner, Maurice Richardson*

IAN S.A. CLEMENT, ESQUIRE
Chief Deputy Attorney General
V.I. Department of Justice
St. Thomas, VI
*For Respondent Wynnie Testamark,*
*Director of the Bureau of Corrections*

## MEMORANDUM OPINION AND ORDER

¶1 **THIS MATTER** came before the Court for oral arguments on February 2, 2024, on the

following:

---

[1] The caption in this matter is amended *sua sponte*, pursuant to Rule 25(d) of the Virgin Islands Rules of Civil Procedure. In 2019, Governor Albert Bryan, Jr. named Wynnie Testamark, as Director of the Bureau of Prisons after former Director Rick Mulgrave's resignation.

[2] Because this matter was briefed pro se, certain legal arguments have not been fully presented. As such, this opinion's precedential value is limited to the facts and arguments of this specific case and should not be read as dispositive of similar arguments that may arise in future habeas proceedings. For example, no argument was presented challenging the federal legal principles applied on direct appeal. Yet, in a future matter with a petitioner represented by counsel, a lawyer may present cogent reasons why the law of this Territory makes it inappropriate to apply such federal precedents.

[3] Attorney Dollison was appointed solely for the purposes of filing the reply and presenting oral arguments; he had no role in the briefing of the petition, which identified the issues upon which the petition was based.

2025 VI Super 15U

(1)     Maurice Richardson's (Richardson) Petition for Writ of Habeas Corpus, filed May 25, 2018;

(2)     Respondent's Informal Response, filed July 29, 2022; and

(3)     Petitioner's Reply to Informal Response, filed November 23, 2022.

Richard H. Dollison, Esquire appeared on behalf of Petitioner, who was present at the Red Onion Correctional Center. Ian S. A. Clement, Esquire, appeared on behalf of Respondent. All parties appeared remotely via Zoom. For the reasons outlined below, Richardson's petition will be denied.

## I.     FACTUAL AND PROCEDURAL HISTORY

¶2      The history and underlying facts of this matter have been thoroughly canvassed in prior opinions of various courts,[4] and the following summary is limited to those facts that are material to the issues presently before the Court. On March 26, 1994, at approximately midnight, Virgin Islands Police Department (VIPD) Officer Stephen Hodge was shot fourteen times outside his home in Lindberg Bay, St. Thomas, in the U.S. Virgin Islands.

¶3      VIPD in collaboration with the Federal Bureau of Investigations (FBI) investigated Officer Hodge's death. As part of the investigation, witnesses were identified and statements taken. Forensic evidence, shell casings and a towel, were recovered at the scene.

¶4      Athnell Coker (Coker) provided a statement and disclosed that, four or five days after Office Hodge's murder, Richardson told Coker that the murder was an ambush attack and that he

---

[4] *See generally Mosby v. Mullgrav* ("*Mosby IV*"), 65 V.I. 261 (V.I. 2016); *Harris v. Gov't of the V.I.*, 55 V.I. 1102 (D.V.I. App. Div. 2011) (unpublished); *see also Gov't of the V.I. v. Richardson* ("*Richrdson II*"), 513 Fed. Appx. 199 (3d Cir. 2013) (unpublished); *Gov't of the V.I. v. Mosby* ("*Mosby II*"), 512 Fed. Appx. 253 (3d Cir. 2013) (unpublished); *Mosby v. Gov't of the V.I.* ("*Mosby I*"), 55 V.I. 1138 (D.V.I. App. Div. 2011) (per curiam); *Richardson v. Gov't of the V.I.* ("*Richrdson I*"), 55 V.I. 1193 (D.V.I. App. Div. 2011) (per curiam); *Mosby v. Mullgrav* ("*Mosby III*"), ST-2015-MC-00063, 2015 WL 6600568 (V.I. Super. Ct. Oct. 29, 2015) (unpublished)

2025 VI Super 15U

and others waited in the bushes until Officer Hodge came out of his house and they shot him. Richardson also told Coker that Richardson stood over Officer Hodge and shot him with a shotgun.

¶5 Richardson then gave Coker a sawed-off shotgun wrapped in a towel that Coker buried in the yard behind his house. Coker told VIPD that Richardson sent men to retrieve the shotgun from the yard. VIPD never recovered a shotgun.

¶6 On June 17, 1995, Richardson was one of five people arrested and charged with Officer Stephen Hodge's murder.

¶7 On August 6, 1996, the trial in *Gov't of V.I. v. Maurice Richardson*, Criminal No. F1/1996[5], the underlying matter, began in the Superior Court[6] before the Honorable Judge Ishmael A. Meyers. On August 19, 1996, a jury found Richardson guilty of Count I, conspiracy to commit murder, in violation of Title 14 V.I.C. § 551(1), Count II, first-degree murder, in violation of Title 14 V.I.C. §§ 922(a)(1) and (11), and Count IV, unauthorized possession of a firearm, in violation of Title 14 V.I.C. §§ 2253(a) and (11). On November 15, 1996, Richardson was sentenced to five years on Count I, life without parole on Count II, and five years on Count IV, all to run concurrently. A written judgment and commitment was entered on November 22, 1996.[7] A timely notice of appeal to the Appellate Division of the District Court of the Virgin Islands was filed December 2, 1996.

¶8 On September 16, 2011, the District Court entered a *per curiam* memorandum opinion, wherein the District Court concluded that Richardson failed to allege any errors warranting

---

[5] Harris was charged under St. Thomas Criminal Case Number F1/1996, and the other Defendants were initially charged under separate case numbers (Case Nos. 375/95, 376/95, 377/95, 301/95) that were later dismissed without prejudice. Upon refiling of charges, all five Defendants were prosecuted under F1/1996.

[6] At the time of trial, the Superior Court was known as the Territorial Court of the Virgin Islands.

[7] On June 28, 2024, in *Richardson v. Gov't of the V.I.*, Case Number 2020-MC-00011, Richardson was granted habeas corpus relief and resentenced to life imprisonment with the possibility of parole on Count II. No other changes were made to the previous judgment and commitment.

**2025 VI Super 15U**

reversal of his convictions for murder, unauthorized possession, or conspiracy to commit murder and, therefore, affirmed Richardson's convictions.[8] Richardson then appealed to the United States Court of Appeals for the Third Circuit. On February 13, 2013, the Third Circuit affirmed Richardson's convictions.[9]

¶9 On May 29, 2018, Richardson filed this Petition for Writ of Habeas Corpus alleging twelve grounds for habeas corpus relief. The Respondent filed an informal response on July 29, 2022, and Richardson filed his reply on November 23, 2022. Oral arguments were heard on February 2, 2024, and the matter was taken under advisement.

## II.    STANDARD OF REVIEW

¶10 "Habeas corpus is an equitable remedy whereby individuals who are restrained in violation of their constitutional rights may seek release."[10] Section 3 of the Revised Organic Act states that "[a]ll persons shall have the privilege of the writ of habeas corpus and the same shall not be suspended except as herein expressly provided."[11] In addition, the Virgin Islands Legislature "enacted chapter 91 of title 5 of the Virgin Islands Code [to] establish a procedure for seeking habeas corpus relief under Virgin Islands law, [which] codifies the right to habeas corpus and explains the process through which it can be obtained."[12] Under the statute, "every person unlawfully imprisoned or restrained of his liberty, under any pretense whatever, may prosecute a

---

[8] *Richardson I*, 55 V.I. 1193.
[9] *Richardson II*, 513 Fed. Appx. 199.
[10] *Ledesma v. Gov't of the V.I.*, 2016 V.I. LEXIS 167, at *3, 2016 WL 6078568 (V.I. Super. Ct. Oct. 13, 2016) (unpublished) (quoting *Monsanto v. Gov't of the V.I.*, 49 V.I. 163, 169 (V.I. Super. Ct. 2007)).
[11] Revised Organic Act of 1954 § 3 and 48 U.S.C. § 1561.
[12] *Rivera-Moreno v. Gov't of the V. I.*, 61 V.I. 279, 293-294, 2014 V.I. Supreme LEXIS 46, at *13-15 (VI. 2014) (citing 5 V.I.C. §§ 1301-25).

## 2025 VI Super 15U

writ of habeas corpus, to inquire into the cause of such imprisonment or restraint."[13] "Any person who believes he or she is unlawfully imprisoned or detained in custody, confined under unlawful conditions, or otherwise unlawfully restrained of his or her liberty, may file a petition for a writ of habeas corpus to seek review of the legal of that imprisonment or detention.[14]

¶11    "When presented with a petition for a writ of habeas corpus, [the Superior Court] must first determine whether the petition states a prima facie case for relief — that is, whether it states facts that, if true, entitle the petitioner to relief — and also whether the stated claims are for any reason procedurally barred."[15] The habeas petitioner "bears the burden of proving the facts supporting the petition or establishing grounds entitling him to relief."[16] "If a petitioner alleges that he is illegally imprisoned, the petition must state how the imprisonment is illegal."[17] "The petitioner must state specific factual allegations which require habeas relief rather than conclusory or speculative allegations."[18] In addition, "the habeas corpus petition is not a vehicle for directly appealing a conviction or relitigating trial."[19] As the Supreme Court of the Virgin Islands has stated, "a writ of habeas corpus is an inappropriate medium to rehash . . . issues" decided at trial or on direct appeal.[20]

---

[13] *Id.*

[14] V.I.H.C.R. 2(a)(1).

[15] *Rivera-Moreno.*, 61 V.I. at 311 (citation omitted).

[16] *Ledesma,* 2016 V.I. LEXIS 167, at *5-6.

[17] *Id.* (citing 5 V.I.C. § 1302(2)).

[18] *Mitchell v. Wilson*, 62 V.I. 326, 330 (V.I. Super. Ct. 2015); *see also Townes v. Jarvis*, 577 F.3d 543, 550, 2009 U.S. App. LEXIS 16244, *17 (4th Cir. 2009) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999)).

[19] *Ledesma,* 2016 V.I. LEXIS 167, *3-5 (citing *Rodriguez v. Bureau of Corr.*, 58 V.I. 367, 377 (V.I. 2013) (opining that "[i]t is settled legal precedent that criminal defendants are barred from using [post-conviction collateral attacks like habeas] to relitigate issues decided on direct appeal" (internal quotations and citation omitted))); *Blyden v Gov't of the V.I.*, 64 V.I. 367, 377-78 (V.I. 2016).

[2020] *Ibrahim v. Gov't of the V.I.*, Civ. No. 2007/76, 2008 V.I. Supreme LEXIS 20, at *4, 2008 WL 901503 (V.I. Jan. 18, 2008) (unpublished).

¶12    "If the court determines that the petition does not state a prima facie case for relief or that the claims are all procedurally barred, the court will deny the petition outright," but "if it appears that the writ ought to issue," the Superior Court "shall grant [a writ of habeas corpus] without delay."[21] "Notably, the habeas corpus statute is procedural — the issuance of the writ does not decide the issues or guarantee the petitioner is entitled to relief."[22]

## III.    ANALYSIS

¶13    In support of his petition, Richardson contends the following:[23] (1) insufficiency of the evidence to include witness credibility, unreliable testimony, and lack of forensic evidence;[24] (2) ineffective assistance of counsel;[25] (3) the Court's failure to grant a new trial after co-defendant Harris' conviction was overturned;[26] and (4) Richardson was denied a fair trial in accordance with traditional and fundamental standards of due process.[27]

---

[21] *Rivera-Moreno.*, 61 V.I. at 311 (citing 5 V.I.C. § 1304).

[22] *Ledesma*, 2016 V.I. LEXIS 167, *3-5 (citing *Rivera-Moreno*, 61 V.I. at 312).

[23] Richardson enumerates twelve challenges, or "errors," in his petition. Petition for Habeas Corpus (May 25, 20218). The Court finds that a few are overlapping or address the same challenge. Therefore, the Court will address those similar challenges together to avoid repetitiveness.

[24] Id., p. 4-5 (The witness "recanted his testimony at the end of trial, stating that he made a mistake in identifying Pedro Harris. . . . This is the second error. It became evident that the government had a weak case . . . ."); p. 6 ("During pretrial hearings, the government said that they recovered the shotgun and sent it to the FBI lab in Virginia for testing but that the test came back negative as being the weapon used to kill Officer Hodge. After that, no weapon was ever mentioned again, and no gun was presented to the jury. This was the third error."); p. 15 ("And after all that testimony about this weapon, mind you, the government never even showed a gun at all during the trial. This was the twelfth error.").

[25] Id., p. 3 (Richardson's "lawyer was Elmo Adams, Esq. This is the first error.").

[26] Id., p. 15 ("Pedro Harris, had his conviction vacated because the prosecutor knowingly used false testimony to obtain a conviction. This was the eleventh error.").

[27] Id. p. 8 ("This was the fourth error—failure to preserve evidence that could potentially exonerate the accused."); p. 10-11 ("The trial court excluded the statements as inadmissible hearsay, concluding they were not trustworthy or reliable. This was the seventh error."); p. 13 ("Once the trial court declared that Paniagua was unavailable, it also found that his taped confession was inadmissible hearsay. This was the eight error.") p. 9 ("Gent Mosby's lawyer filed a writ of habeas corpus ad testificandum to secure Paniagua's appearance at trial and the trial judge signed the writ. Later, however, the trial court went back . . . on the issue of Paniagua appearing to testify in court . . . . This was the sixth error—denial of a defense to an accused . . . ."); p. 14 ("With the exclusion of this critical evidence, coupled with the trial court's refusal to allow the taped confession, it is clear that I, Maurice Richardson, was denied a trial 'in accord with traditional and fundamental standards of due process.' This was the ninth error."). p. 9 ("[A]t

¶14 Although Richardson already argued these issues on appeal to both the Appellate Division

of the District Court of the Virgin Islands and United States Court of Appeals for the Third Circuit,

as well as challenged the sufficiency of the evidence, those appeals do not prevent Richardson

from raising them again as part of a habeas petition before this Court.[28]

> ### A. Richardson's claim of the insufficiency of the evidence, including witness credibility, unreliable testimony, and the lack of forensic evidence does not provide a basis for habeas relief.[29]

¶15 "When considering challenges to the sufficiency of evidence, the question is 'whether any

reasonable jury, when viewing the evidence in the light most favorable to the government, could

find the defendant guilty beyond a reasonable doubt.'"[30] Review for sufficiency of the evidence

"is extremely deferential to the jury's verdict and requires that [this Court] view the evidence in

the light most favorable to the People, and reversal is 'confined to cases where the failure of the

---

first the trial court seemed prepared to allow the identity of SKS to be revealed but later adopted a contrary course. This was the fifth error—failure to admit potentially exculpatory evidence."); p.14 ("The trial was unfair because I did not get to confront SKS because the government failed to disclose his identify. This was the tenth error.").

[28] *Mosby IV*, 65 V.I. at 267, 2016 V.I. Supreme LEXIS 28, at *8 ("Recently, this Court held that'[w]here a petitioner properly raised an issue on direct appeal to *this Court*, and *this Court* rejected it on the merits, the petitioner is procedurally barred from re-litigating that issue through a habeas petition.' However, in that same decision, we reaffirmed the holding of *Hughley* that there is no procedural bar to raising an issue in a habeas petition if the direct appeal had been taken to the Appellate Division or the Third Circuit pursuant to their former appellate jurisdiction over the Superior Court." (quoting *Blyden*, 64 V.I. at 378)).

[29] Because a reviewing Court must consider all the evidence before the jury, even evidence later deemed to have been improperly admitted, the Court considers Richardson's challenge to the sufficiency of the evidence supporting his convictions first. *Corraspe v. People*, 2024 VI 21, ¶52 & n.19 (considering sufficiency of the evidence first and considering all evidence before the jury); *Ambrose v. People*, 56 V.I. 99, 107 (V.I. 2012); *Galloway v. People*, 57 V.I. 693, 700 n.3 (V.I. 2012); *Rawlins v. People*, 61 V.I. 593, 604 (V.I. 2014) ("[E]ven though we hold in the following section that the admission of J.J.'s and Melendez's testimony violated the Confrontation Clause, we consider all evidence that was before the jury during deliberations in addressing a sufficiency challenge, even if that evidence was improperly admitted." (citing *Cascen v. People*, 60 V.I. 392, 409 (V.I. 2014))); *Cascen*, 60 V.I. at 409 ("[W]hen an appellate court reviews the sufficiency of the evidence, it must consider all the evidence the jury had before it, including any evidence that is later determined to be inadmissible," (quoting *Ambrose*, 56 V.I. at 107)); *e.g.*, *Thomas v. People*, 63 V.I. 595, 603-05 (V.I. 2015) (considering evidence that was ultimately deemed to have been admitted in violation of the defendant's right to be free from unlawful search and seizure when conducting a sufficiency of the evidence review); *see also Ponce v. People*, 72 V.I. 828 (V.I. 2020) (Swan, J., concurring).

[30] *Merrifield v. People*, 56 V.I. 769, 774 (V.I. 2012) (citing *Smith v. People*, 51 V.I. 396, 397-98 (V.I. 2009)).

2025 VI Super 15U

prosecution is clear.' This Court must affirm a jury's verdict as long as substantial evidence was presented at trial to allow a rational trier of fact to convict, under the standard of beyond a reasonable doubt, when the evidence is viewed in the light most favorable to the prosecution."[31] "In order for the evidence to rationally support a verdict, there must be a logical and convincing nexus between the evidence—both direct and circumstantial—and the guilty verdict. A trier of fact acts rationally if, in light of reason and everyday experience, the evidence, properly presented, rationally and logically supports the existence of the facts establishing the elements of the crime."[32]

¶16    "[T]he evidence is not insufficient because testimony from witnesses may be contradictory or evidence may be in conflict, which, in reality, means that the finder of fact must have made a credibility determination and weighed the evidence presented."[33]  A jury is entitled to accept some, all, or none of a witness's testimony in its role as the fact finder with sole responsibility for credibility determinations.  Furthermore, "[a] motion for writ of habeas corpus is not the proper forum for challenging the credibility of witnesses."[34]

---

[31] *Greer v. People*, 74 V.I. 556, 575 (V.I. 2021) (quoting *Gonsalves v. People*, 70 V.I. 812, 830 (V.I. 2019), and citing *Fahie v. People*, 62 V.I. 625, 630 (V.I. 2015); *Webster v. People*, 60 V.I. 666, 678-79 (V.I. 2014); *Cascen v. People*, 60 V.I. 392, 401 (V.I. 2014)).

[32] *Id.* at 575–76 (footnote omitted) (citing *Gov't of the V.I. v. Williams*, 739 F.2d 936, 940 (3d Cir. 1984); *Davis v. People*, 69 V.I. 619, 652, 653 n.25 (V.I. 2018) (Swan, J., concurring); *Tot v. United States*, 319 U.S. 463, 466-67 (1943)); *cf. Greer*, 74 V.I. at 576 ("A verdict is irrational if there is a lack of connection between the facts offered in evidence and the essential elements of the crime charged. Indeed, when the logical connection between the record evidence and the elements of the crime is so strained as not to have a reasonable and rational relation to everyday experience, common sense, and the circumstances of life as they are in reality, the verdict cannot stand." (*citing Thompson v. Louisville*, 362 U.S. 199, 204 (1960); *Tot*, 319 U.S. at 467-68; *Jackson v. Virginia*, 443 U.S. 307, 317 (1979); United States v. *Jones*, 713 F.3d a336, 339-40 (7th Cir. 2013))).

[33] *Id.* at 577 (citing *Marcelle v. People*, 55 V.I. 536, 547 (V.I. 2011); *Smith v. People*, 51 V.I. 396, 401 (V.I. 2009)).

[34] *Destin v. Gov't of the V.I.*, ST-2017-MC-00017, 2017 VI LEXIS 127, at *9, 2017 WL 3475702 (V.I. Super. Ct. Aug. 9, 2017) (unpublished) (quoting *Dowling v. Gov't of the V.I.*, 44 V.I. 256, 264 (V.I. Super. Ct. 2002)); *see Codrington v. Gov't of the V.I.*, ST-2016-MC-00038, 2016 V.I. LEXIS 190, at *10, 2016 WL 6948761, at *4 (V.I. Super. Ct. Nov. 23, 2016) (unpublished) ("[A]n issue which is raised in the trial court, and upon which conflicting testimony develops, cannot serve as a basis for habeas corpus." (citation omitted)).

**2025 VI Super 15U**

¶17     Generally, "[a]ny final determination regarding the believability of witnesses at trial and the weight to be accorded such testimony, is within the sole province of the jury."[35]  However, "[w]hile the general rule that the credibility of witnesses is not open to question on appeal holds true, courts of appeals are entitled to 'disregard the jury's reliance on a witness's testimony when that testimony is inherently incredible or improbable.' 'Testimony is deemed inherently incredible or improbable where it is either so manifestly false that reasonable [people] ought not to believe it, or it must be shown to be false by objects or things as to the existence and meaning of which reasonable [people] should not.' *Rivera v. People* outlines factors that are relevant to attacking the credibility of testimony on appeal.  In this assessment, factors to be considered are: (1) whether it was physically impossible for the witness to have observed that to which she testified; (2) considering the laws of nature, whether it was impossible for the events to which the witness testified to have happened; and (3) whether the testimony is of incredible dubiousness.  To be 'incredibly dubious,' testimony must be inherently improbable with a complete lack of circumstantial evidence or be coerced, equivocal, and wholly uncorroborated."[36]

¶18     Richardson raises three challenges to the sufficiency of the evidence.  First, he argues that witness Sorhainodo misidentified Pedro Harris and recanted his testimony, which Richardson claims the Government knew the testimony to be false and still presented it during trial.[37]  Second,

---

[35] *Dowling*, 44 V.I. at 264; *see Gov't of the V.I. v. Robinson*, 30 V.I. 428, 29 F.3d 878 (3d Cir. 1994); *Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 700 (3d Cir. 1995) (Evaluation of witness credibility is the exclusive function of the jury ..."); *Codrington*, 2016 V.I. LEXIS 190, at *10.

[36] *Gonsalves*, 70 V.I. at 853, 2019 VI 4, ¶ 68 (V.I. 2019) (quoting *Phillip v. People*, 58 V.I. 569, 583-84 (V.I. 2013), and citing *Rivera v. People*, 64 V.I. 540, 554-556 (V.I. 2016)).

[37] "To establish a due process violation based on a state's solicitation of, or failure to correct, false evidence, a defendant must show: (1) the falsity and materiality of testimony, and (2) prosecutor's knowledge of such falsity." *Rodriguez*, 58 V.I. at 375 (citing *Bell v. True*, 413 F. Supp. 2d 657, 677 (W.D. Va. 2006)).

**2025 VI Super 15U**

Richardson challenges the credibility of witness Coker's testimony arguing that Coker is a "drug abuser" and he was "convicted just on the testimony of a dried-out drug addict when no other evidence was presented, and the drug addict who buried the gun could not even produce the gun to show the jury." Lastly, Richardson argues that "during pretrial hearings, the government said that they recovered the shotgun and sent it to the FBI lab in Virginia for testing, but the test came back negative as being the weapon used to kill Officer Hodge. After that no weapon was ever mentioned again, and no gun was presented to the jury."[38] None of these arguments challenge any specific element of any of the crimes for which Richardson was convicted.

¶19    Rather, Richardson's challenges are a general attack on the overall evidence in support of conviction. However, none of the arguments establishes a lack of evidence from which a jury could have convicted Richardson. Coker's testimony, taken as credible, established that Richardson confessed to all the elements of the three crimes for which he was convicted. According to Coker, Richardson admitted planning the unlawful murder of the victim by using a firearm. Further, Coker testified to Richardson appearing and seeking assistance in burying the firearm; this is direct evidence that Richardson possessed a sawed-off shotgun. As Coker's testimony about Richardson's confession survived multiple credibility attacks, such confession is considered extremely strong evidence of guilt.[39] Considering this, the failure to produce the actual

---

[38] Habeas Pet. p. 6

[39] *Richardson I*, 55 V.I. at 1215 ("'A confession, especially one that survives the multiple attacks that can be made upon its admissibility, has traditionally been regarded as extraordinarily reliable evidence of the defendant's guilt.'" (quoting *Gov't of the V.I., v. Harris*, 938 F.2d 401, 409 (3d Cir. 1991))).

sawed off shotgun at trial does not undermine the jury's verdict, as first-hard witness testimony of seeing a defendant with a firearm is sufficient to establish possession beyond a reasonable doubt.[40]

¶20　Similarly, Richardson does not make any argument that any witness's testimony was impossible or inherently incredible.　Coker's testimony was corroborated by the other physical evidence of the crime scene and, thus, does not meet the standard to be disregarded as inherently incredible.　Furthermore, Richardson has not argued that it was impossible for Coker to have heard his confession.　Rather, Richardson seeks to rehash the jury's credibility determination, which this Court is prohibited from doing.

¶21　Lastly, Richardson asserts that the prosecutor's use of the false identification of Harris requires reversal of his convictions.　Unlike Harris, whose only connection to the conspiracy was a questionable in-court identification that was later recanted, Richardson's conviction in no way rested on the recanted identification.　Absent some argument indicating how the removal of testimony identifying Harris rendered other evidence insufficient to convict Richardson (and the Court being unable to identify how the evidence was insufficient), the convictions must be affirmed.　Because Richardson has not identified a single element of a single crime for which he was convicted that is lacking in evidentiary support, he has not made a *prima facie* case entitling him to issuance of a writ of habeas corpus.

---

[40] *E.g.*, *Corraspe*, 2024 VI 21, ¶¶56-61; *Nibbs v. People*, 73 V.I. 617, 624-26 (V.I. 2020); *A. Davis. V. People*, 69 V.I. 600, 610-11 (V.I. 2018); *M. Davis v. People*, 69 V.I. 619, 663-67 (V.I. 2018) (Swan, J., concurring); *cf. S. Powell v. People*, 70 V.I. 745 (V.I. 2019) (defendant testified and admitted to using firearm but no firearm produced).

### B. Richardson's allegation of ineffective assistance of counsel does not establish a *prima facie* case for habeas relief.

¶22 "The Sixth Amendment to the United States Constitution provides the accused the right to have assistance of counsel for his defense in criminal prosecutions."[41] "Proving ineffective assistance of counsel presents a high bar."[42] To prevail on a claim of ineffective assistance of counsel, a petitioner must establish that his trial counsel's performance "fell below an objective standard of reasonableness and that counsel's performance prejudiced him or her resulting in an unreliable or fundamentally unfair outcome in the proceeding."[43] There is a "strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance."[44] "Tactical decisions about which competent counsel might disagree do not qualify as objectively unreasonable."[45]

¶23 For a court to determine that "trial counsel's conduct fell outside the zone of reasonable professional assistance," a petitioner "must also affirmatively prove that his counsel's conduct prejudiced him in the proceeding so that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[46]

---

[41] *Castillo v. People.*, 59 V.I. 240, 282, 2013 V.I. Supreme LEXIS 34, at *66 (VI. 2013). The Sixth Amendment of the U.S. Constitution establishes that, in all criminal prosecutions, "the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense." It is well established that the "protections of the Sixth Amendment to the Constitution of the United States [have been extended] to the Virgin Islands." *Rivera v. People.*, 64 V.I. 540, 561-562, 2016 V.I. Supreme LEXIS 16, *34 (V.I. 2016).

[42] *Suarez v. Gov't of the V.I.*, 56 V.I. 754, 759-760, 2012 V.I. Supreme LEXIS 49, *5-7 (VI. 2012).

[43] *Williams v. People*, 78 V.I. 691, 700 (V.I. 2024) (citing *Blyden*, 64 V.I. at 381).

[44] *Suarez*, 56 V.I. at 760 (citing *Bell v. Cone*, 535 U.S. 685, 702 (2002)).

[45] *Id.* at 760 (citing *Ibrahim*, 2008 V.I. Supreme LEXIS 20, at *2; *Bell*, 535 U.S. at 702).

[46] *Id.* at 760 (citing *Corraspe v. People*, 53 V.I. 470, 479-80 (V.I. 2010); *Hill v. Lockhart*, 474 U.S. 52, 57 (1985)).

Richardson v. Testamark, Director of the Bureau of Corrections
Case No. ST-2018-MC-00035
MEMORANDUM OPINION AND ORDER
Page 13 of 20

2025 VI Super 15U

¶24     Richardson alleges that Court appointed counsel "was no criminal defender, he was a paper pusher who came to court, and raised no defense on my behalf, other than to adopt what the fellow defense counsels said. I don't think he even did an independent filing of any motion for relief on my behalf before the trial Court."[47] Richardson does not say what defense counsel failed to present. Simply being dissatisfied with counsel's trial strategy is not enough to prove ineffective assistance of counsel, and Richardson has completely failed to identify a single action by trial counsel that was deficient and has, likewise, failed to demonstrate prejudice warranting reversal for ineffective assistance of counsel.

¶25     Courts give deference to counsel and their performance of their duties; "[i]t is all too tempting for a defendant to second guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable."[48] In the absence of specific identified instances of conduct falling below the professional standard of a defense attorney, Richardson has failed to make any argument that would warrant a reversal of his convictions.

---

[47] Habeas Pet. p. 3.

[48] *Strickland v. Washington,* 466 U.S. 668, 689 (1984). "To prevail on a claim of ineffective assistance of counsel, [a petitioner] must demonstrate that 'counsel's performance fell below an objective standard of reasonableness and that counsel's performance prejudiced [her] resulting in an unreliable or fundamentally unfair outcome in the proceeding.' 'The proper measure of [an] attorney['s] performance ... [is] simply reasonableness under prevailing professional norms,' and, therefore, review of counsel's performance is generally highly deferential, as there is a presumption that 'under the circumstances, the challenged action 'might be considered sound trial strategy.' Accordingly, [a petitioner] must overcome this presumption by pointing to acts or omissions of counsel that fell outside the realm of 'professionally competent assistance' to satisfy the first element of the two-part test." *A. Powell v. People,* 59 V.I. 444, 453 (2013) (quoting *Stanislas v. People,* 55 V.I. 485, 494 (V.I. 2011); *Strickland,* 466 U.S. at 687–90, and citing *Corraspe,* 53 V.I. at 479–80).

2025 VI Super 15U

C.     **Richardson's challenge to the Court's failure to grant a new trial after co-defendant Harris' conviction was overturned is not a basis for habeas relief.**

¶26     A defendant's conviction is not automatically reversed upon the reversal of a codefendant's conviction. Instead, a codefendant has the option to "incorporate the arguments of another [codefendant] by reference[; but]blanket adoption of all issues raised by [a codefendant] does not suffice [w]hen . . . many of the factual predicates of [the codefendant's arguments] on appeal apply only to [that specific codefendant], not to [the codefendant presently before the Court—]the Court will not parse the arguments . . . to determine which of them might be relevant to [the present] appeal."[49] Richardson must point out specifically how the reversal of the conviction of his codefendant Harris undermines Richardson's own conviction such that reversal is warranted.

¶27     Richardson argues that the "misidentification of Pedro Harris is really important to my case, it points out the fact that evidence was falsified, the government knew it was falsified and took advantage of the falsified evidence to win convictions."[50] And because of this, Richardson claims that ". . . Pedro Harris, had his conviction vacated because the prosecutor knowingly used false testimony to obtain a conviction."[51] However, "the case against Harris turned on [a false] identification. Without [this false] in-court identification, Prosecutor Davis would have asked the jury to convict Harris based on Daniel's testimony alone[; which], as a matter of law[,] such evidence would not suffice to sustain a conviction, much less one for murder or conspiracy to

---

[49] *Richardson I*, 55 V.I. at 1201 n.3 (citing *U.S. ex rel. LaCorte, SmithKline Beecham Clinical Laboratories*, 149 F.3d 227 (3d Cir.1998)); *see People v. Poleon*, 50 V.I. 144 (V.I. Super. Ct. 2008) ("[T]he acquittal of the one of two defendants on conspiracy charges does not require the reversal of the conviction of the other defendant if there is sufficient evidence upon which the jury could find that the convicted defendant conspired with someone other than the codefendant."); *People v. Browne*, 54 V.I. 61, 73-85, 93-95 (V.I. Super. Ct. 2010) (considering motions for judgement of acquittal with regard to evidence against each defendant).
[50] Habeas Pet. p. 5
[51] Habeas Pet. p. 15.

commit murder."[52] In contrast, Richardson was connected to the crimes by the uncontradicted testimony of Coker. Additionally, Richardson fails to make any factual connection between the absence of an identification of Harris and a failure of evidence as to his own guilt. Taking away the false identification of Harris does not impact Coker's credibility or the details of Richardson's confession to Coker. Therefore, Richardson has failed to make a *prima facie* case for issuance of a writ of habeas corpus on this basis; and reversal of Richardson's convictions is not warranted.

### D. Richardson's due process right to a fair trial were not violated.

¶28    The Fifth and Fourteenth Amendments to the U.S. Constitution prohibit the government from depriving an inmate of life, liberty, or property without due process of law.[53] A defendant's rights to procedural due process are applicable to the Virgin Islands through Section 3 of the Revised Organic Act: "No law shall be enacted in the Virgin Islands which shall deprive any person of life, liberty, or property without due process of law or deny to any person therein equal protection of the laws."[54]

¶29    In *Malone v People*, the Court held that a defendant must demonstrate that he was convicted in violation of his Sixth Amendment right to compulsory process. The Court established a three-prong test that requires a defendant to show: first, that he was deprived of the opportunity to present evidence in his favor; second, that the excluded testimony would have been material and favorable to his defense; and third, that the deprivation was arbitrary or disproportionate to any legitimate evidentiary or procedural purpose."[55]

---

[52] *Harris*, 55 V.I. at 1129.
[53] U.S. CONST, amend V, XIV. Revised Organic Act of 1954 § 3
[54] *Carty v, People*, 56 V.I. 345, 364 (V.I. 2012).
[55] *Malone v. People*, 53 V.I. 408, 421, 2010 V.I. Supreme LEXIS 6, *22, 2010 WL 449916 (V.I. 2010) (citing *Gov't of the V.I. v. Mills*, 956 F.2d 443, 446 (3d Cir. 1992)).

2025 VI Super 15U

¶30     Richardson argues that "the government disclosed reports and recordings of a confidential informant, SKS, and his investigation of Paniagua between April and June 1994, around the time of Office Hodge's murder. But the tapes have disappeared. . . . The tapes reveal that during one meeting between Paniagua and SKS, Paniagua essentially confessed that he had been involved in the murder of Officer Hodge."[56] Additionally, Richardson argues that "after the government shared this information, all the defense counsels requested that the government disclose the identity of SKS, so they could determine if they wanted to call him as a witness. . . . At first the trial court seemed prepared to allow the identity of SKS to be revealed, but it later adopted a contrary course of action."[57] Lastly, Richardson argues that the "with the exclusion of this critical evidence (Paniagua's testimony) coupled with trial court's refusal to allow the taped confession . . ."[58] and "being unable to confront SKS, because the government did not disclose his identity, Richardson was denied a fair trial."[59]

¶31     Richardson argues that the Court improperly found Paniagua unavailable and excluded his alleged taped confessions as hearsay; thus, Richardson was prevented from presenting Paniagua's confession to the jury. However, Richardson does not specifically argue how presenting either Paniagua or the tape to the jury would be favorable or material to his case, especially where Paniagua denies that it is his voice on the tapes. Facially, a confession to a crime is evidence likely to raise a reasonable doubt in the mind of the fact finder. However, Richardson does not present

---

[56] Habeas Pet. p. 8.
[57] Habeas Pet. p. 9.
[58] Habeas Pet. p. 14.
[59] Habeas Pet. p. 14

any argument as to how the exclusion by the Court of the tapes was arbitrary or disproportionate to the underlying purposes of the rules of evidence.

¶32    The evidence presented to the jury was as follows: there were four men[60] seen outside Officer Hodge's home and it was determined that four different firearms were used.[61] The fact that Paniagua may have confessed and later denied his voice on the tapes does not contradict the evidence against Richardson.    More importantly, Richardson does not argue how the prior disposition of these exact arguments in *Richardson v. Gov't of the V.I.*, 55 V.I. 1193 (D.V.I. App. Div. 2011) (per curiam), was incorrect.    While this Court has discretion to consider issues previously argued to the Appellate Division and/or Third Circuit, establishing a *prima facie* case for habeas relief certainly requires that a petitioner identify some basis or argument for why the prior ruling should be disregarded.

¶33    Upon review by the Third Circuit, the court addressed "[t]hree arguments relate to the Paniagua tape recording.    Richardson argue[d] that the Superior Court violated his Sixth Amendment right to compulsory process when it denied his motion for a writ of habeas corpus ad testificandum requiring Paniagua to testify, that the Superior Court erred by determining that the tape was inadmissible hearsay, and that the Superior Court incorrectly denied his motion to disclose the identity of the CI who recorded the conversation.  These arguments" were determined to be "meritless for the same reasons articulated in" *Gov't of V.I. v. Mosby*, 512 Fed. Appx. 253, 256–58, (3d Cir. 2013).[62]

---

[60] *Richardson II*, 513 Fed. Appx. at 201 ("Witnesses Bernice Celestine, Eustace Sorhaindo, and Shorn Pennyfeather all heard gun shots the evening of the murder and saw four men dressed in black near Officer Hodge's home shortly before or after his murder.").

[61] *Id.* at 201 (four firearms).

[62] *Id.* at 202.

**2025 VI Super 15U**

¶34    The Third Circuit explained its ruling. "Mosby contends that the required showing would have been met if he had been given a chance to confront Paniagua's denial of involvement in the murder with the recording, which the parties agree constitutes hearsay. We are not persuaded. The favorability determination must be based on a witness's actual testimony and admissible evidence. This is so because defendants cannot circumvent the rules of evidence by calling witnesses solely to impeach them with evidence that would otherwise be inadmissible."[63]

¶35    The Court further explained that "[t]he record supports the Superior Court's conclusion that the statements on the tape were untrustworthy.  There is simply no evidence to support the tape's suggestion that a hit man was brought to the Virgin Islands.  If anything, the evidence at trial suggests that a hit man was *not* involved because of the multiple guns used in the killing.  Mosby does not explain why the officers would pay a hit man $50,000 to join them in murdering a police officer, rather than to simply kill the officer himself.  Furthermore, the record does not provide any reason to conclude that the Superior Court was clearly unreasonable in determining that the circumstances did not indicate trustworthiness.  There is evidence supporting the conclusion that the CI was financially motivated to fabricate evidence and had been an unreliable informant in the past.  Furthermore, the tape does show that Paniagua's statement was not spontaneous and was made when he had reason to enhance his criminal reputation to the CI by sounding 'all powerful.' Accordingly, the Superior Court's ruling that the statements on the tape were inadmissible hearsay was not an abuse of discretion."[64]

---

[63] *Mosby II*, 512 Fed. Appx. at 256 (citing *United States v. Sebetich*, 776 F.2d 412, 428–29 (3d Cir. 1985)).
[64] *Mosby II*, 512 Fed. Appx. at 257.

¶36     Lastly, "[a] defendant is generally not entitled to the identity of a CI when 'the informant was not an active participant or eyewitness, but rather a mere tipster' to the reported offense. Here, SKS was very similar to a tipster because he had no role in the murder of Officer Hodge and only happened upon the information in the tape as a part of an unrelated drug investigation. SKS thus could not provide any information beyond what was already on the tape, thereby rendering his identity of minimal value to the preparation of Mosby's defense. The Superior Court's denial of Mosby's request to disclose SKS's identity was not, therefore, an abuse of discretion."[65]

¶37     Ultimately, Richardson appears to claim error in the denial of the disclosure of the identity of SKS because defense could have called SKS to testify that Paniagua confessed to conspiracy to murder Officer Hodge. However, a confession must be corroborated such that it is determined to be reliable.[66] As such, SKS's testimony about Paniagua's confession to SKS would have been subject to a very similar reliability analysis (a corroboration analysis) already conducted with regard to the recording, which was determined to be unreliable hearsay.[67]

¶38     With regards to SKS's identity, Richardson raises the inability of counsel to determine if SKS should be called as a witness. However, the fundamental lack of reliability of the confession renders any evaluation of SKS's credibility irrelevant because, no matter how credible SKS, the confession would be uncorroborated hearsay without sufficient indicia of reliability.

¶39     Absent at least some attempt to overcome the lack of reliability of the confession, any concern about evaluating SKS as a witness is premature. Because Richardson has not presented

---

[65] *Id.* at 257–58 (citing *United States v. Jiles,* 658 F.2d 194, 197–98 (3d Cir.1981); *Roviaro v. United States,* 353 U.S. 53, 62 (1957) (explaining that disclosure of confidential informants' identities is guided by the balancing of "the public interest in protecting the flow of information against the individual's right to prepare his defense")).
[66] *Richarson I,* 55 V.I. at 1210-15.
[67] Richarson I, 55 V.I. at 1210-15.

**2025 VI Super 15U**

any new arguments that would undermine confidence in the prior dispositions of these same arguments and has failed to counter the prior determination of a lack of reliability, Richardson has failed to make a *prima facie* case for habeas relief.

Accordingly, it is hereby

**ORDERED** that Richardson's petition for writ for habeas corpus is **DENIED**; and it is further

**ORDERED** that a copy of this Order shall be directed to counsel of record and by certified mail on Maurice Richardson at Red Onion BOC, Inmate No. 1415436, Central Mail Distribution Center, 3521 Woods Way, State Farm, Virginia 23160.

Dated: June 6 , 2025

_____
HON. SIGRID M. TEJO
JUDGE OF THE SUPERIOR COURT
OF THE VIRGIN ISLANDS

**ATTEST:**

**TAMARA CHARLES**
Clerk of the Court

BY: _____
**DONNA D. DONOVAN**
Court Clerk Supervisor  06 / 09 / 2025